1  Jeffrey Willis (#004870/PCC # 62724)
   Adrienne S. Ehrhardt (#022429)
2  Collin Sult (#024039)
   SNELL & WILMER L.L.P.
3  One South Church Avenue, Suite 1500
   Tucson, Arizona 85701-1630
4  Telephone: (520) 882-1200
   *Attorneys for Defendant*

5

6                IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8
   EMILY A. COOPER, individually and as
9  representative of all others similarly          No.  CV-06-00010-TUC
   situated,
10                                                  **QC FINANCIAL'S MEMORANDUM
                        Plaintiff,                  OF POINTS AND AUTHORITIES IN
11                                                  SUPPORT OF ITS MOTION TO
                                                    DISMISS OR IN THE ALTERNATIVE
12 vs.                                              TO COMPEL ARBITRATION AND
                                                    STAY PROCEEDINGS**
13
   QC FINANCIAL SERVICES, INC.,                     Oral Argument Requested
14
15                     Defendant,
16
17                          **INTRODUCTION**

18        The parties to this lawsuit entered into agreements with binding arbitration

19 provisions.  Plaintiff Emily A. Cooper ("Plaintiff") signed written agreements waiving her

20 rights to have a trial by jury to resolve any dispute; to have a court, other than a small

21 claims tribunal, resolve any dispute; and to serve as a representative and/or participate as a

22 member of a class of claimants.  Ignoring these binding contract provisions, Plaintiff

23 brings suit alleging a variety of claims, and all are subject to binding arbitration.

24 Defendant QC Financial Services, Inc. ("QC Financial") therefore asks this Court to

25 dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in

26 the alternative, to compel arbitration of Plaintiff's claims and to stay these proceedings

27 pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the

28 "FAA").

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

**BACKGROUND**

QC Financial is a Missouri corporation doing business in Arizona as a deferred presentment company providing payday loans pursuant to A.R.S. § 6-1251 *et seq*. Plaintiff is a customer of QC Financial. Plaintiff signed several agreements, all providing for binding arbitration. First, on March 12, 2004, Plaintiff completed a Customer Application ("Application") and obtained a loan for $200.00. *See* **Ex. A**, Cooper's Customer Application, attached. The Application contained the following arbitration provision:

> **ARBITRATION AND WAIVER OF JURY TRIAL:** Arbitration is a means for legal matters between parties to be resolved by a neutral arbitrator rather than a Court. We have a policy of arbitrating all claims, demands, and disputes which cannot be resolved in a small claims tribunal including scope and validity of this arbitration provision and any right you may have to participate in an alleged class action (hereinafter "dispute(s)"). All customer agreements contain another arbitration provision that supercedes this arbitration provision and governs the resolution of disputes. . . . You agree that **YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY to resolve disputes against us, our agents and/or owners**. The Federal Arbitration Act governs this arbitration provision. The arbitrator shall not conduct class arbitration.

(emphasis in original).

Thereafter, Plaintiff elected to defer payment on her loan by entering into a Deferred Presentment Agreement with QC Financial ("Agreement"). *See* **Ex. B**, Deferred Presentment Agreement, attached. Plaintiff subsequently entered into various loan agreements and Deferred Presentment Agreements between March 12, 2004 and May 25, 2005, all of which contain the same arbitration provisions. *See* **Ex. C**, Customer Information Report, attached. The Deferred Presentment Agreement, which superseded the Customer Application, contains the following Arbitration Provision:

> 1.     For purposes of this Waiver of Jury Trial and Arbitration Provision . . . the words "dispute" and "disputes" are given the broadest possible meaning and include without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision . . . (b) all federal or state law claims, disputes, or controversies arising from or relating directly or indirectly to this Deferred Presentment Agreement . . . (c) all counterclaims . . . (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or

Snell & Wilmer

L.L.P.

LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

regulation . . . (g) all claims asserted by you individually against us . . . (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity . . .

***

2.      You acknowledge and agree that by entering into this Arbitration Provision:

**(a)      YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**

**(b)      YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**

**(c)      YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

***

3.      **…THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION.**

***

6.      Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration.  Any appeal from a judgment from a small claims tribunal shall be resolved by binding arbitration.

7.      This Arbitration Provision…shall be governed by the [Federal Arbitration Act].

(Emphasis in original).

Plaintiff failed to remit sums owed pursuant to the Deferred Presentment Agreements.  On September 15, 2005, Plaintiff filed this lawsuit against QC Financial in the Superior Court of Arizona in Pima County, alleging (1) Violation of A.R.S. § 6-1251, et seq.; (2) Breach of Contract; (3) Fraudulent Misrepresentation; (4) Negligent Misrepresentation; (5) Negligence Per Se; (6) Racketeering: Pattern of Unlawful Activity in Violation of A.R.S. § 13-2301 *et seq.*; (7) Unjust Enrichment and (8) Declaratory Judgment.  Plaintiff also requested the Court approve her as a representative of a class of individuals pursuant to Rule 23 of the Arizona Rules of Civil Procedure.

Plaintiff served her Complaint on QC Financial on December 23, 2005.   QC Financial subsequently removed this action to this Court on January 11, 2006.[1]

---

[1]      On her application to QC, Plaintiff indicated she was referred to QC Financial by Angela Randolph.  Plaintiff's class action counsel is Gary Urman of DeConcini McDonald Yetwin & Lacy, P.C.

## ARGUMENT

**I.    THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT BECAUSE ARBITRATION IS THE EXCLUSIVE REMEDY FOR HER CLAIMS.**

Pursuant to the parties' contract, this Court cannot be a forum for any disputes between the parties.  Under both Federal and Arizona law, an action should be dismissed where a party contractually agrees exclusively to arbitration.  *See, e.g., Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (affirming district court's order compelling arbitration and dismissing complaint); *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (affirming dismissal of claims where all claims were subject to arbitration); *see also Martin Marietta Aluminum, Inc. v. General Electric Co.*, 586 F.2d 143 (9th Cir. 1978) (affirming grant of summary judgment where all claims to court were barred by arbitration clause); *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 53-54, 56, 672 P.2d 1322, 1323-24, 1326 (Ariz. Ct. App. 1983) (affirming trial court's grant of motion to dismiss "based on lack of subject matter jurisdiction and failure to state a claim" under Ariz. R. Civ. P. 12(b)) where arbitration provided for exclusive remedy). Because Plaintiff's agreements with QC Financial clearly state that all disputes, other than those in Small Claims, must be resolved through arbitration and cannot be brought in a court (**Ex. A**), this Court should dismiss Plaintiff's Complaint and allow the parties to arbitrate their disputes in accordance with their agreements.  Indeed, both the Arizona Superior Court and Justice Court dismissed a nearly identical class action law suit brought against QC Financial by the same attorney based on the same contracts so that the parties could arbitrate their dispute.  (**Ex. D**, Order, at 2; **Ex. E**, Ruling)  There is no reason why the same result should not occur here.

---

Mr. Urman also filed a class action counterclaim against QC on behalf of Angela Randolph, the person who referred Plaintiff, that is almost identical to the claims asserted in the instant case.  Mr. Urman filed that class action counterclaim in Arizona Justice Court in response to an action to recover unpaid monies under a payday loan brought by QC Financial in Small Claims Court.  There, QC Financial moved to dismiss the class action counterclaim based on the mandatory arbitration provisions in its payday loan contracts with Randolph, which contain the same language as the payday loan contracts signed by Plaintiff here.  The Justice Court granted the motion to dismiss Randolph's counterclaim, holding that "[t]his is no hidden, tucked away, etc. provision which might be construed as unconscionable.  The defendant knew what she was doing at the time of the first contract, and at each subsequent contract.  She is bound by the contract."  **Ex. D**, 5/11/05 Minute Entry of Pima County Justice Court, attached.  Randolph appealed that decision to the Arizona Superior Court, and the Superior Court affirmed the dismissal of Randolph's class action counterclaim.  **Ex. E**, 1/19/06 Ruling of Superior Court, attached.

## II.   THE ARBITRATION PROVISION IS BINDING AND REQUIRES ARBITRATION.

Congress enacted the FAA to reverse the long standing judicial hostility toward arbitration agreements "and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA establishes a liberal policy favoring arbitration agreements and requires courts to enforce rigorously private arbitration agreements according to their terms. *Volt Info Scis., Inc. v. Board of Trustees*, 489 U.S. 468, 479 (1989). A court should not strike down an arbitration agreement except in those very limited circumstances where the arbitration agreement at issue is unenforceable on a ground that exists at law or equity for any contract, such as fraud, duress, or unconscionability. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936-37 (9th Cir. 2001), *cert. denied*, 534 U.S. 1133 (2002). Courts should give deference to these Congressional findings and directives when determining the enforceability of the parties' arbitration agreements. *See Simula*, 175 F.3d at 719 (holding that the FAA "reflects Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause").

### A.   The FAA Governs the Arbitration Agreement in this Case.

The FAA governs whether the parties' Arbitration Provision is enforceable. The parties' Agreement provides: "This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA." Agreement at ¶ 7. The FAA governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32 (1983). Not only does the contract containing the Arbitration Provision at issue specifically provide that the arbitration provision is made pursuant to a transaction involving interstate commerce, but also Congress intended courts to construe "commerce" as broadly as possible. *Simula,* 175 F.3d at 719.

1     The FAA provides that arbitration agreements "shall be valid, irrevocable, and

2 enforceable, save upon such grounds that exist at law or in equity for the revocation of

3 any contract." 9 U.S.C. § 2.  Moreover, when interpreting an arbitration agreement, a

4 court must give deference to the federal policy favoring arbitration and resolve any

5 ambiguities as to the scope of the arbitration clause in favor of arbitration. *Mastrobuono*

6 *v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995).  "[I]n the absence of any

7 express provision excluding a particular grievance from arbitration . . . only the most

8 forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T*

9 *Techs., Inc. v. Community Workers of Am.*, 475 U.S. 643, 650 (1986).

10     While the Court may examine conscionability of the Arbitration Provision under

11 Arizona law, it must pay deference to the policies and presumptions of the FAA.  "[I]n

12 applying general state law principles of contract interpretation to the interpretation of an

13 arbitration agreement within the scope of the [FAA] due regard must be given to the

14 federal policy favoring arbitration." *Volt*, 489 U.S. at 475-76.

15     Plaintiff is bound by the terms of the arbitration agreement contained in her loan

16 agreements.  The Agreement specifically provides that Plaintiff waived her rights to

17 resolve any dispute, including "all federal or state law claims, disputes or controversies,

18 arising from or relating directly or indirectly to this Deferred Presentment Agreement"

19 and "all common law claims, based upon contract, tort, fraud or other intentional torts"

20 before this Court.  Agreement at ¶ 1.  Moreover, Plaintiff waived her right to serve as a

21 class representative.  Agreement at ¶ 2.  This Court is therefore not the proper forum to

22 adjudicate Plaintiff's claims; the proper forum for adjudication of Plaintiff's claims is an

23 arbitration forum:

24       The FAA provides for stays of proceedings in federal district courts when an
           issue in the proceeding is referable to arbitration, and for orders compelling

25       arbitration when one party has failed or refused to comply with an
           arbitration agreement.  See 9 U.S.C. §§ 3 and 4.  We have read these

26       provisions to manifest a liberal federal policy favoring arbitration
           agreements.

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

*EEOC v. Waffle House, Inc*. 122 S.Ct. 754, 761 (2002)(quotations and citations omitted). This Court should compel Plaintiff's claims to arbitration and stay this case pending arbitration pursuant to the FAA.[2]

### B.   The Court Should Strictly Limit Its Analysis to the Arbitration Provision and Not the Underlying Loan Transaction.

QC Financial expects Plaintiff to argue that the contract containing the Arbitration Provision was unconscionable or that it was a contract of adhesion.  However, when reviewing the enforceability of an arbitration provision, the Court should focus solely on the Arbitration Provision and not the entire contract.

Under the United States Supreme Court's "severability" doctrine, challenges to the conscionability or enforceability of the Arbitration Provision must be solely focused on the clause; arguments or alleged evidence that the underlying loan transaction is adhesive or unconscionable are reserved for the arbitrator.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (holding claim of fraud in the inducement must be considered by the arbitrator, not the trial court).[3]  Therefore, any argument presented by Plaintiff that she was given the loan agreements on a "take it or leave it" basis is irrelevant to the determination of enforceability of the Arbitration Provision.  Plaintiff must instead prove that *the Arbitration itself is adhesive or unconscionable, not that the loan agreements or circumstances surrounding the loan application process are one-sided*.

---

[2] The Arbitration Provision is enforceable under Arizona law as well.  The Agreement provides: "If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Arizona."  Agreement at ¶ 7.  *See also* A.R.S. § 12-501 (providing that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract").  Arizona courts have concurred with the federal policy strongly favoring arbitration:  "Moreover, the public policy of Arizona favors arbitration. . . . Because of the public policy favoring arbitration, arbitration clauses are construed liberally and any doubts about whether a matter is subject to arbitration are resolved in favor of arbitration."  *City of Cottonwood v. James L. Fann Contracting, Inc.*. 179 Ariz. 185, 189, 877 P.2d 284, 288 (Ariz. App. 1994).

[3] The United States Supreme Court currently has pending before it the issue of whether under the FAA, a challenge to the validity of the underlying contract is severable from a challenge to the validity of the arbitration clause.  In *Cardegna, et al. v. Buckeye Check Cashing, Inc.*, 894 So. 2d 860 (2005), *cert. granted*, ___ U.S.L.W. ___ (U.S. June 20, 2005) (No.04-1264), the Florida Supreme Court distinguished *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), on the ground that the challenge there (fraud in the inducement) would have rendered the underlying contract voidable under state law, whereas the challenge in *Cardegna* (illegality) would render the underlying contracts void under state law.  Whether this is a distinction without a difference is pending.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

1    In *Jenkins v. First Am. Cash Adv. Of Ga., LLC*, 400 F.3d 868, 876-78 (11th Cir.

2    2005), the Eleventh Circuit reversed the district court's finding that the an arbitration

3    provision in a payday loan agreement was unconscionable because it was an adhesion

4    contract.  The Eleventh Circuit held that the procedural unconscionability arguments were

5    aimed at the loan agreements generally and not the arbitration provision.  As such, they

6    were reserved for the arbitrator: "the FAA does not permit a federal court to consider

7    claims alleging the contract as a whole was adhesive." *Id.*  Because the FAA governs this

8    case (as discussed above), the same rationale applies, and the FAA does not permit this

9    Court to consider any claims by Plaintiff alleging the contract as a whole was adhesive.

10   This Court's analysis should therefore focus on the arbitration provision, and not the

11   underlying transaction.  Such focus can lead only to compelling arbitration.

12   **III.    ARBITRATION SHOULD BE COMPELLED.**

13       **A.    The Exact Same Arbitration Provision at Issue in this Case Has
               Already Been Subject to Compelled Arbitration.**

14       Plaintiff is a potential class member in another case in which the exact same

15   arbitration provision is at issue.  In *QC Fin. Serv., Inc. v. Angela Randolph*, Pima County

16   Superior Court, No. C20053582, one of QC Financial's customers counterclaimed,

17   bringing claims virtually identical to the claims brought by Plaintiff in this case (and,

18   consequently, brought by the same attorney).  The exact same contracts and exact same

19   contract provisions, including the arbitration provisions at issue in this case are at issue in

20   the *Randolph* case.

21       In *Randolph*, the Pima County Superior Court found the arbitration provision

22   enforceable.  *See* **Ex. E**.  In that case, plaintiff argued that the contract was unenforceable

23   because it is beyond the reasonable expectations of its customers, is unconscionable, and

24   is void as against public policy.  The Superior Court disagreed and upheld the arbitration

25   provision.  Fully anticipating that Plaintiff will make the same arguments before this

26   Court, QC Financial offers the following arguments regarding unconscionability,

27

28

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

1   reasonable expectations and public policy it offered in the *Randolph* case, arguments with

2   which the Superior Court agreed.

3   **B.      The Arbitration Provision is Not Unconscionable.**

4        QC Financial fully expects Plaintiff to argue that the loan agreements are

5   unconscionable.  However, on a motion to compel arbitration, the district court does not

6   determine whether the contract as a whole is unconscionable, but instead the court is

7   limited to determining whether the arbitration provision itself is unconscionable.  *See*

8   *Prima Paint*, 388 U.S. at 395; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

9        Plaintiff has an enormous burden to show that the Arbitration Provision is

10   unconscionable.  She must show that the Arbitration Provision is "such as no man in his

11   senses and not under delusion would make on the one hand, and as no honest and fair man

12   would accept on the other."  RESTATEMENT (SECOND) OF CONTRACTS § 208 (1979).

13   Plaintiff cannot satisfy this substantial burden.

14        QC Financial expects Plaintiff to argue that the Arbitration Provision is part of an

15   adhesive contract, and therefore unconscionable, and not enforceable.  Even if the contract

16   is one of adhesion, Arizona courts have not hesitated to enforce adhesive contracts, as

17   long as the contracts are not otherwise void.  As *Broemmer v. Abortion Services of*

18   *Phoenix, LTD,* 840 P.2d 1013, 1017 (Ariz. 1992), a case Plaintiff will likely rely upon

19   heavily, acknowledges, "a contract of adhesion is fully enforceable according to its terms

20   unless certain other factors are present which, under established legal rules . . . operate to

21   render it otherwise."  *Id.*   The reason Arizona courts are reluctant not to enforce

22   contractual provisions is because "[t]he law in Arizona is that a valid contract must be

23   given full force and effect . . . ."  *G & S Invs. v. Belman*, 700 P.2d 1358, 1368 (Ariz. Ct.

24   App. 1985).  Thus, even an adhesive contract should be enforced unless the contract does

25   not fall within the reasonable expectations of the other party or if the contract is

26   unconscionable.  *Id.*

27        A contract may be unconscionable procedurally or substantively.  QC Financial

28   expects that Plaintiff will not make a claim that the Arbitration Provision is procedurally

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

1   unconscionable, but will argue substantive unconscionability.  In order for the Plaintiff to

2   show that the Arbitration Provision is substantively unconscionable, she must show

3   "contract terms . . . so one-sided as to oppress or unfairly surprise an innocent party, an

4   overall imbalance in the obligations and rights imposed by the bargain, and significant

5   cost-price disparity." *Maxwell v. Fidelity Fin. Serv.*, 907 P.2d 51, 58 (Ariz. 1995).

6   Plaintiff will likely argue that the Arbitration Provision is substantively unconscionable

7   because it (1) waives the right to file a class action lawsuit; (2) waives the right to a jury

8   trial; and (3) waives the right to any court other than a small claims tribunal.

9        Numerous state and federal courts, including the United States Supreme Court,

10  have examined the first proposition, that the Arbitration Provision is unconscionable

11  because it waives the right to file a class action suit.  Each of these courts have held that

12  an agreement to waive one's eligibility to pursue class litigation does not make an

13  arbitration provision substantively unconscionable.  *See Gilmer v. Interstate/Johnson*

14  *Lane Corp.*, 500 U.S. 20, 33 (1991) (validating an arbitration provision that barred

15  potential plaintiffs from participating in class actions for Age Discrimination in

16  Employment claims, reasoning "even if the arbitration could not go forward as a class

17  action or class relief could not be granted by the arbitrator, the fact that the [ADEA]

18  provides for the possibility of bringing a collective action does not mean that individual

19  attempts at conciliation were intended to be barred.") (quotations omitted); *Johnson v.*

20  *West Suburban Bank*, 225 F.3d 366, 378 (3d Cir. 2000) (holding that an arbitration

21  provision that waived one's right to participate in class actions was not substantively

22  unconscionable); *Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 818 (11th Cir.

23  2001)(reasoning that under the Federal Arbitration Act, the Supreme Court "rejected

24  generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of

25  weakening the protections afforded in the substantive law to would-be complainants.'"

26  (*citing Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000));

27  *Autonation USA Corp. v. Leroy*, 105 S.W.3d 190, 199-200 (Ct. App. Tex. 2003) ("the

28  primary purpose of the FAA is to overcome courts' refusals to enforce agreements to

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

arbitrate and to ensure that private agreements to arbitrate are enforced according to their terms.") (citations omitted); *Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) ("the arbitration agreement at issue here explicitly precludes the Livingstons from bringing class claims or pursuing 'class action arbitration,' so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis."); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) (rejecting borrower's argument "that the Arbitration agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain her legal representation given the small amount of her individual damages"); *Randolph*, 244 F.3d at 819 ("Giving full weight to the congressional policy embodied in the FAA, we hold that a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA."); *Virgil v. Sears Nat'l Bank*, 205 F. Supp. 2d 566, 573 (E.D. La. 2002) (stating "that the fact that the clause . . . waives . . . the 'right' to proceed by class action does not, in itself, render the clause unconscionable"); *Lomax v. Woodmen of the World Life Ins. Soc'y*, 228 F. Supp. 2d 1360, 1365 (N.D. Ga. 2002) ("Generally, prohibiting class-wide arbitration does not render an otherwise valid arbitration clause unconscionable."); *Pick v. Discover Fin. Serv., Inc.*, No. Civ. A. 00-935-SLR, 2001 WL 1180278, at *5 (D. Del. Sept. 28, 2001) (stating "it is generally accepted that arbitration clauses are not unconscionable because they preclude class actions"); *Zawikowski v. Beneficial Nat'l Bank*, No. 98 C 2178, 1999 WL 35304, at *2 (N.D. Ill. Jan. 11, 1999) (upholding clause prohibiting class actions because "[n]othing prevents the Plaintiffs from contracting away their right to a class action").

Plaintiff will also claim that the Arbitration Provision is substantively unconscionable because it waives the right to a jury trial and waives the right to any court other than a small claims. However, these contentions run afoul with established Arizona precedent. Arbitration provisions, by their very nature, waive a party's right to a jury trial. *Harrington v. Pulte Home, Corp.*, 119 P.3d 1044, 1051 (Ariz. App. 2005).

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

1   Arbitration provisions in which both parties waive the right to a jury trial are therefore not

2   substantively unconscionable.

3        Moreover, if Plaintiff contends that the Arbitration Provision is substantively

4   unconscionable because it "waives the right to any court other than a small claims

5   tribunal" that contention would be specious.   Unlike most arbitration provisions, which

6   do not allow either party access to small claims tribunals, the Arbitration Provision does

7   allow litigation in small claims tribunals.  Thus, the Arbitration Provision is less

8   restrictive than a legion of arbitration provisions that have been upheld.  *See, e.g. Collins*

9   *v. Horton*, 252 F. Supp. 2d 936 (D. Ariz. 2003); *Mitsubishi Motors Corp. v. Soler*

10  *Chrysler-Plymouth, Inc*., 473 U.S. 614 (1985).  Because the Arbitration Provision

11  provides <u>more</u> access to courts than what is customary, Plaintiff cannot claim that the

12  Arbitration Provision is unconscionable.

13       Plaintiff may also imply that the Arbitration Provision contains a "limitation of

14  remedies."  Under the Arbitration Provision, however, Plaintiff did not relinquish or give

15  up any remedy, claim, or cause of action she may have against QC Financial.  All she and

16  QC Financial did was agree on a forum in which to bring their claims and refrain from

17  participating in class actions.

18       Based on freedom of contract principles, parties may agree to bring their disputes

19  in arbitration and waive possible class relief.  *Johnson v. W. Suburban Bank*, 225 F.3d

20  366, 377 (3d Cir. 2000) ("simply because judicial remedies are part of a law does not

21  mean that Congress meant to preclude parties from bargaining around their availability").

22      **C.**    **The Contract Was Within Plaintiff's Reasonable Expectations.**

23       Because the Arbitration Provision was within the reasonable expectations of

24  Plaintiff, the Court should enforce it.  The only cases Plaintiff will likely rely on for the

25  opposite proposition are easily distinguished.  Plaintiff will most assuredly rely on

26  *Broemmer v. Abortion Services of Phoenix, LTD*, 840 P.2d 1013 (Ariz. 1992) for the

27  proposition that the Arbitration Provision was not within Plaintiff's reasonable

28  expectations.  However, an examination of *Broemmer* reveals that not only are its facts

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

1    inapposite to this case, but the *Broemmer* court explicitly limited its holding to the

2    peculiar facts of that case.

3        In *Broemmer*, plaintiff was a pregnant 21-year-old unmarried high school graduate

4    who earned less than $100.00 per week. *Id*. at 1014.  When the father-to-be discovered

5    that plaintiff was pregnant, he insisted that she receive an abortion.  Plaintiff described the

6    time as "one of considerable confusion and emotional and physical turmoil." *Id*.  During

7    plaintiff's visit to the abortion clinic, plaintiff signed an arbitration agreement that

8    required, inter alia, "any arbitrators . . . shall be licensed medical doctors who specialize in

9    obstetrics/gynecology." *Id*.  Subsequent to the abortion procedure, plaintiff filed a

10   medical malpractice action, which the clinic sought to dismiss based on the arbitration

11   provision. *Id*. at 1015.

12       On appeal, the Arizona Supreme Court held that the arbitration provision did not

13   meet plaintiff's "reasonable expectations." *Id*. at 1017.  However, an analysis of the

14   rationale behind the *Broemmer* court's decision reveals that the current case is easily

15   distinguishable.  First, the *Broemmer* court highlighted the emotional condition of the

16   plaintiff at the time she signed the arbitration provision. *Id.*  The court found that she

17   "was under a great deal of emotional stress . . ." due to the arduous decision to terminate

18   her pregnancy and "was not experienced in commercial matters." *Id*.  The inherent stress

19   involved in the abortion procedure, combined with the fact that plaintiff was unfamiliar

20   with business procedures, led the court to conclude that the arbitration provision fell

21   outside of her reasonable expectations. *Id*.

22       Plaintiff will try to analogize the emotional strain of a patient about to undergo an

23   abortion to her "desperation" in deciding to seek a loan.  The arguments are unpersuasive.

24   Here, Plaintiff received more than 10 loans, so she clearly was not under any stress. *See*

25   **Ex. C**, Customer Information Report.  She saw the Arbitration Provision time and time

26   again.

27       Moreover, as stated above, evidence of Plaintiff's or other QC Financial's

28   customers' alleged economic "desperation" is an argument aimed squarely at the

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

-13-

1     underlying loan transaction, and as such, it violates the severability doctrine. This is the

2     precise argument that the Eleventh Circuit soundly rejected in *Jenkins*. The Court may

3     not consider such generalized attacks on the underlying loan transaction.

4         The Arizona Superior Court in *Randolph* agreed when considering the same

5     arbitration provisions at issue in this case:

> Randolph argues that the facts in this case closely parallel the facts in
> <u>Broemmer</u>. She ignores important differences however. There is no
> evidence that Randolph faced the kind of emotional stress that was present
> in <u>Broemmer</u>. Also, the waiver provisions in this case were conspicuous
> and explicit. In <u>Broemmer</u>, the waiver of a jury trial was implied in the
> agreement to arbitrate. And, unlike a patient preparing to enter surgery as in
> <u>Broemmer</u>, a consumer preparing to enter into a loan transaction should
> reasonably expect that his or her disputes with the lender may be subject to
> binding arbitration.
>
> It is not the arbitration provision itself which is claimed to violate
> Randolph's reasonable expectations but the waiver of the right to participate
> in a class action. Randolph probably did not have any expectation of being
> able to pursue a class action, but she would have reasonably expected to
> arbitrate the dispute under the FAA or proceed in small claims court. The
> agreement did not violate her reasonable expectations. Also, the precise
> language contained in the arbitration provision in this case has been found to
> not be unconscionable. <u>Jenkins v. First American Cash Advance of
> Georgia, L.L.C.</u>, 400 F.3d 868, 879 (11th Cir. 2005).

### D.     The Arbitration Provision Does Not Violate Public Policy.

        Finally, the Arbitration Provision does not violate public policy. As previously

discussed, both federal and Arizona courts have expressed a public policy favoring

arbitration. *Volt*, 489 U.S. at 475-76; *City of Cottonwood*, 179 Ariz. at 189. The *Randolph*

court agreed that the Arbitration Provision does not violate public policy:

> Finally, this arbitration provision does not violate Arizona public policy.
> "The public policy of Arizona favors arbitration. . . [A]rbitration clauses are
> construed liberally and any doubts about whether a matter is subject to
> arbitration are resolved in favor of arbitration." <u>City of Cottonwood v.
> James L. Fann Contracting, Inc.</u>, 179 Ariz. 185, 189, 877 P. 2d 284, 288
> (App. 1994).

        Plaintiff may argue that the class action waiver gives QC Financial "virtual

immunity" to claims by its customers and violates public policy. The argument is

meritless. First, under the FAA, such public policy attacks on mandatory arbitration

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

clauses are inappropriate.  Only state law contract defenses—defenses relevant to <u>any</u>

contact—can be used to challenge the enforceability of an arbitration agreement.  The

Supreme Court has unequivocally stated that the FAA precludes specialized scrutiny of

arbitration agreements:

> A court may not . . . in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law.  Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.

*Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987).  *See also Doctor's Assocs.*, 517 U.S. at

687 ("courts may not . . . invalidate arbitration agreements under state laws applicable

only to arbitration provisions"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24

(1991) (purpose of FAA is to "reverse the longstanding judicial hostility to arbitration

agreements . . . and to place arbitration agreements upon the same footing as other

contracts"); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 432 (5th Cir. 2004)

(explaining that "state courts may properly strike down arbitration clauses, but they may

not treat arbitration clauses <u>differently</u> than other contract terms") (emphasis in original).

Claiming that the enforcement of a contractual provision will have adverse effects on

society, i.e., allow businesses and industry to grant themselves "virtual immunity," is

precisely the type of specialized, and non-contract based, argument prohibited under the

FAA.  The only public policy at issue in this case is the FAA and Arizona's presumption

in favor of arbitration.

## CONCLUSION

Plaintiff entered into a valid, binding arbitration agreement with QC Financial.

Just as the Pima County Superior Court enforced the exact same arbitration provision at

issue in this case, QC Financial respectfully requests that this Court enforce the contract

entered into between the parties, compel arbitration, and stay these proceedings pending

arbitration.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

1

2          Respectfully submitted this 1st day of February, 2006.

3                                          SNELL & WILMER L.L.P.

4

5                                    By: s/ Adrienne S. Ehrhardt
                                         Jeffrey Willis
6                                        Adrienne S. Ehrhardt
                                         Collin Sult
7                                        One South Church Avenue
                                         Suite 1500
8                                        Tucson, AZ  85701-1630
                                         Attorneys for Defendant
9

10   Of Counsel:
     Joseph M. Rebein
11   Dana M. Mehrer
     SHOOK, HARDY & BACON L.L.P.
12   2555 Grand Boulevard
     Kansas City, Missouri  64108
13
     Matt Wiltanger
14   SHOOK HARDY & BACON L.L.P.
     84 Corporate Woods
15   10801 Mastin, Suite 1000
     Overland Park, Kansas  66210
16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on 1st day of February, 2006, I electronically transmitted the

3

attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5

Gary F. Urman, Esq.
Stacy Rupprecht Butler, Esq.

6

DeCONCINI, McDONALD YETWIN & LACY, P.C.
2525 East Broadway Boulevard, Suite 200

7

Tucson, Arizona  85716-5300

8

Attorneys for Plaintiff

9

10

By: s/ Leslie Shanley

11

99999.0000\EHRHARA\TUX\402628

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Snell & Wilmer**
— L.L.P. —
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
(520) 882-1200

# EXHIBIT A

# CUSTOMER APPLICATION

**APPLICATION TYPE:** ☐ Deferred Deposit ☐ Title Loan   Account Number

**PERSONAL**

| NAME (Last) | (First) | (MI) | Social Security Number | Home Phone |
|---|---|---|---|---|
| Cooper | Emily | A | 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 | (520) 319-5399 |

Current Address   Apt. No.   City   State   Zip Code
4402 E. Brett St   Tucson   A'Z   85712

In your Name? ☒ Yes ☐ No
Cell/Pager Number ( )

How long here? (yrs./mos) 1 yr   ☒ Rent ☐ Own ☐ Other

Driver's License # State AZ
(State ID) D00853343

Date of Birth 06/14/82

Previous Address (if less than 3 years at above address)
3801 E. Bellevue

How long here? (yrs./mos) 1 yr.

Landlord Name  Dun & Bradstreet
Landlord Phone No

**BANK**

Do you have a Checking Acct.? ☒ Yes ☐ No   Name of Bank  Commercial Fed.   Checking Acct. #   How long open? 2 yrs.

Do you currently have an outstanding balance with a deferred deposit or a payday loan company? ☐ Yes ☒ No
If yes, please list:

**BANKRUPTCY & GARNISHMENT INFO**

Ever filed bankruptcy? ☐ Yes ☒ No   Discharge Date:   In bankruptcy now? ☐ Yes ☒ No
Wages currently garnished? ☐ Yes ☒ No   What for?   When does it end?

**EMPLOYMENT**

Employer (or source of income)  SEARS OPTICAL  BROADWAY Phillmont

| How Long? (yrs./mos.) | Take Home Pay | Paid: | Next Pay Date |
|---|---|---|---|
| 1 yr | 420.00 | ☐ Once a Week ☐ Once a Month ☒ Twice a Month ☐ Every ☐ Other | 03/25/04 |

Direct Deposit ☐ Yes ☒ No

Direct Phone (520) 747-7984

Supervisor Name  Kathy Dunbavin

Supervisor Phone (520) 747-7982 ext.

Employer Address 5950 E Broadway   City Tucson   State Az  Zip 85712

Days Worked ☒ M ☒ Tu ☐ W ☒ Th ☒ F ☐ Sa ☒ Su

Title Optician   ☒ Full Time ☐ Part Time   Work Hours: From 9:30 To 5:30

Do you have a second job? ☐ Yes ☒ No  If yes, where?   Phone ( )   Hours:

Other Income  Mom - Sometimes

*Alimony, child support or separate maintenance income need not be revealed if you do not wish to have it considered as part of your application.
*If applying for Title Loan, please fill in car information.

**CAR**

| Make | Model | Type | Year | Color | Plate # |
|---|---|---|---|---|---|
| | | | | | |

**CONTACT**

| Name | Relationship (NEAREST RELATIVE NOT LIVING W/YOU) | Home Phone | Work Phone |
|---|---|---|---|
| 1. Sharon Escardon | | | 790-3584 |
| 2. Patricia Mathie | | 906-0026 | |
| 3. Katie Cooper | | 290-3294 | |
| 4. | | | |
| 5. | | | |

**OTHER**

How did you hear about us?
☒ Referral   ☐ Radio   ☐ Walk-In   ☐ Direct Mail
☐ Flyer   ☐ Sign   ☐ Newspaper   ☐ Other (explain)
☐ Phone Book   ☐ TV   ☐ 1-800 #

Did a customer or Friend refer you? ☒ Yes ☐ No
If Yes, what is the name of that person?
Angela Randolph

**PLEASE READ BACK SIDE AND SIGN ON BACK**

**APPLICATION CONTINUED**

**WARNING: Cash Advance, Payday Advance, Deferred Presentment & Payday Loans transactions are only intended to address short-term, NOT long-term, credit needs.** Repeated or frequent use can create serious financial hardships. You should evaluate the costs and benefits of all alternatives before entering into one of these transactions. Other forms of short-term credit that may be less expensive include a loan from another institution or from family or friends, a credit card cash advance, an account with overdraft protection, or a salary advance.

**Notice:** The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

**Virginia Residents:** You verify that prior to receiving this Application, you have received, read, understood and signed the "NOTICE AND ACKNOWLEDGEMENT. You acknowledge that you have also received a pamphlet entitled "Payday Lending in the Commonwealth of Virginia – Borrower Rights and Responsibilities" before you received or completed this Application

**Wisconsin Residents:** NOTICE TO MARRIED APPLICANTS: No provision of a marital property agreement, a unilateral statement under section 766.59 or a court decree under section 766.70 adversely affect the interest of the creditor unless the creditor, prior to the time the credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred

**California Residents:** As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations

**Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**Utah Residents:** As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations

**Credit Inquiries and Reporting Authorization:** You authorize us to obtain credit history reports from credit bureaus and other credit reporting agencies and companies, including "Tele-Track", for credit evaluation purposes, and you also authorize the reporting of this credit application and credit history to any and all of these credit bureaus and other credit reporting agencies and companies. "Tele-Track" is a national database of consumers who have a record of transactions in certain industries, including, but not limited to, deferred deposit, check cashing, rent-to-own, cable television accounts, consumer finance companies, and retail furniture stores

**Contact Authorization:** You acknowledge that we may verify the truthfulness of the information you provided on this application by contacting third parties

**Privacy Policy:** You verify that you have received a copy of the company's Privacy Policy.

**ARBITRATION AND WAIVER OF JURY TRIAL:** Arbitration is a means for legal matters between parties to be resolved by a neutral arbitrator rather than a Court. We have a policy of arbitrating all claims, demands, and disputes which cannot be resolved in a small claims tribunal, including the scope and validity of this arbitration provision and any right you may have to participate in an alleged class action (hereinafter "dispute(s)"). All customer agreements contain another arbitration provision that supercedes this arbitration provision and governs the resolution of disputes. However, if you do not enter into a customer agreement with us, then this arbitration provision governs the resolution of disputes. You agree that **YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY to resolve disputes against us, our agents and/or owners.** The Federal Arbitration Act governs this arbitration provision. If either party has a dispute, they must notify the other in writing of the dispute. You have the right to select any of the following arbitration organizations, which will govern the arbitration under its consumer rules: American Arbitration Association (1-800-778-7879) http://www.adr.org, J.A.M.S./Endispute (1-800-626-5267) http://www.jamsadr.com, or National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com, and we will advance all of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees. You will be responsible for your attorney's fees, if any. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration. The arbitrator shall not conduct class arbitration. The arbitration hearing will be conducted in the county in which this Customer Application was signed.

You acknowledge that the information provided on this Application is accurate to the best of your knowledge and information. You represent that you are not currently involved in any bankruptcy proceedings or considering whether to file for bankruptcy protection. You agree to the terms of the "Arbitration and Waiver of Jury Trial" provision.

This application is the property of QC Holdings and its subsidiaries

APPLICANT SIGNATURE: _____     DATE: 03/12/04

[07258_00/0101/00519439.DOC.2]

# EXHIBIT B

# DEFERRED PRESENTMENT AGREEMENT

3/12/2004 09:58 AM

| NAME AND ADDRESS OF CUSTOMER(S) | NOTE NO. | ACCT NO. | NAME AND ADDRESS OF LICENSEE |
|---|---|---|---|
| **Cooper, Emily A**<br>4402 E Broh St<br>Tucson, AZ 85712<br>Hm:(520)319-5888   Wk: 520 | 893-0001923 | 893-0000551 | Quik Cash #893<br>1101 N. Pantano, Ste 155<br>(520)886-0801 |

| ANNUAL PERCENTAGE RATE<br>(The cost of your credit as a yearly rate)<br>**459.90%** | FINANCE CHARGE<br>(The dollar amount the credit will cost you)<br>**$35.29** | AMOUNT FINANCED<br>(The amount of credit provided to you<br>or on your behalf)<br>**$200.00** | TOTAL OF PAYMENTS<br>(The amount you will have paid after you<br>have made all payments as scheduled)<br>**$235.29** |
|---|---|---|---|

**PAYMENT SCHEDULE**
One Payment in the amount of $    $235.29        due on____03/26/04____
Security: No security interest is taken in connection with this transaction.
Prepayment: If you pay off early, you will not have to pay a penalty, you (may or may not be) entitled to a refund of part of the finance charge. See your Deferred Presentment Agreement for any additional information about nonpayment, default and prepayment refunds.

**ITEMIZATION OF AMOUNT FINANCED $    $200.00**
1. Amount Paid Directly to You:   $200.00   2. Amount paid on Loan No.  893-0001923  3. Total amount financed with us: $    $235.29
We are holding Check Number    145                          as a Deferred Presentment

**PROMISE TO PAY:** I promise to pay Licensee at the above address the Principal Amount of $    $235.29   plus service fee at the rate of  459.90   per year according to the Payment Schedule as disclosed above and other amounts as provided in this Deferred Presentment Agreement. Payments will be applied first to any charges owed other than principal and service fees, then to service fees due, and then to principal.

**PREPAYMENT**  I may repay amounts owed under this Deferred Presentment Agreement in whole or in part at any time. However, if any partial prepayment is made, there will be no refund of any finance charges, and subsequent payment must be paid in full as scheduled until this obligation is paid in full.

**CHECK COLLECTION:** If my check is returned due to insufficient funds, a closed account or a stop payment order, I understand that this company may use all available civil remedies to collect on my check including the imposition of the dishonored check fee prescribed in section 44-6852.

**DEFAULT:** I will be in default under this Deferred Presentment Agreement and any other document which is part of this transaction if I fail to make a payment as required by this Deferred Deposit Agreement and any other document which is part of this transaction. Upon default, after I have received any notices required by Arizona State Law in regards to default and right to cure, and after any required time periods have expired, Licensee may accelerate all amounts due under this Deferred Presentment Agreement, which then become due and payable.

**NO CUSTOMER MAY HAVE OUTSTANDING MORE THAN ONE DEFERRED PRESENTMENT SERVICE AGREEMENT AT ONE TIME AND THE FACE AMOUNT, EXCLUSIVE OF ANY FEES, CANNOT BE MORE THAN FIVE HUNDRED DOLLARS.**

**I ACKNOWLEDGE THAT I HAVE RECEIVED A COMPLETED COPY OF THIS DEFERRED PRESENTMENT AGREEMENT, AND MY TRUTH IN LENDING DISCLOSURES, AND THAT I HAVE REVIEWED AND UNDERSTAND THE TERMS AND CONDITIONS TO WHICH I HAVE AGREED. THROUGHOUT THIS AGREEMENT, 'I' INCLUDES EACH BORROWER SIGNING BELOW.**

MAR 25

X _____   3/12/2004          X _____   3/12/2004
Signature(s) of Borrower(s)      Date            Signature of Licensee's                Date
                                                 Authorized Representative

PAID
MAR 25 2004   Customer Copy

RevIN0600

## ADDITIONAL TERMS AND CONDITIONS OF THE DEFERRED PRESENTMENT AGREEMENT

Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an arbitrator) for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:

1.  For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "we", "us" and "our" mean QC Financial Services, Inc. d/b/a Quik Cash. The words "you" and "your" mean the customer who has signed below. Furthermore, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Deferred Presentment Agreement (including the Arbitration Provision), the information you gave us before entering into this Deferred Presentment Agreement, including the Customer Application, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure to us or related third parties of any non-public personal information about you.

2.  You acknowledge and agree that by entering into this Arbitration Provision:
    (a)  YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;
    (b)  YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and
    (c)  YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

3.  Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

4.  Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org; J.A.M.S./Endispute (1-800-626-5267) http://www.jamsadr.com; or National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Deferred Presentment Agreement or the Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

5.  If you demand arbitration, then at your request we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). If related third parties or we demand arbitration, then at your written request we will advance your portion of the Arbitration Fees. Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under this Deferred Presentment Agreement occurred, or in such other place as shall be ordered by the arbitrator. The arbitrator may decide with or without any hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration, the arbitrator shall not apply any federal rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award you expert witness fees, statutory damages and/or arbitrator's award may be filed with any court having jurisdiction. Regardless of whether the arbitrator renders a decision or an award in your favor resolving the dispute, you will not be responsible for reimbursing us for your portion of the Arbitration Fees.

6.  All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

7.  This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Arizona.

8.  This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. The Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

You acknowledge that you have read, understand, and agree to the terms of the Deferred Presentment Agreement, including the Additional Terms and Conditions set forth above, and that you have received a complete copy of such

QC

Financial Services, Inc. d/b/a Quik Cash

Signature _____   Date 03/12/04   By: _____

Any comments or questions may be directed to QC's Customer Comment Line at the following toll-free number: 1-866-660-2243

[0725S_00/0101/00526960.DOC_4]

# EXHIBIT C

# Customer Information Report

Last: Cooper                 First: Emily           Middle:  A
SSN: 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    Phone:  (520)319-7711    Other Phone:  (520)319-7711
Address: 4402 E Broh St
City:  Tucson      State:  AZ     ZIP: 85712

Birthdate: 6/14/1982    Height: 5'07"
Eye Color:  BLU      Hair Color:  BR    Weight:  130
Description:  Driver License            Gender:  F

Customer ID: 893-0000551
Entered On:  3/12/2004 9:47:37 AM
Visit Count:  25                 Entered By:     JMV
                                 Date Last Visit:  5/25/2005 11:07:20 A

## Employment

| Maker Name | Date/Time | Description | Teller | Voided | Amount | Fee | Tendered |
|---|---|---|---|---|---|---|---|
| **Deferred Deposit - New** | | | | | | | |
| Cooper, Emily A | 3/12/2004 9:47:09 AM | #145 Due 3/26/2004 15.000% | JMV | | ($235.29) | $35.29 | ($200.00) |
| Cooper, Emily A | 3/25/2004 3:48:55 PM | #103 Due 4/8/2004 15.000% | AAA | | ($512.11) | $76.82 | ($435.29) |
| Cooper, Emily A | 5/24/2004 9:46:50 AM | #163 Due 6/7/2004 15.000% | JMV | | ($470.59) | $70.59 | ($400.00) |
| Cooper, Emily A | 10/6/2004 2:34:08 PM | #199 Due 10/20/2004 15.000% | JMV | | ($588.24) | $88.24 | ($500.00) |
| Cooper, Emily A | 12/20/2004 10:22:49 A | #212 Due 1/3/2005 15.000% | AAA | | ($470.59) | $70.59 | ($400.00) |
| Cooper, Emily A | 2/4/2005 11:45:43 AM | #224 Due 2/18/2005 15.000% | EVP | | ($588.24) | $88.24 | ($500.00) |
| Cooper, Emily A | 3/10/2005 12:58:30 PM | #250 Due 3/24/2005 15.000% | EVP | | ($466.76) | $70.01 | ($396.75) |
| Cooper, Emily A | 4/1/2005 4:26:48 PM | #251 Due 4/15/2005 15.000% | EVP | | ($588.24) | $88.24 | ($500.00) |
| Cooper, Emily A | 5/25/2005 11:07:20 AM | #260 Due 6/8/2005 15.000% | EVP | | ($588.24) | $88.24 | ($500.00) |
| **Total for Deferred Deposit - New** | | **Count 9** | | | ($4,508.30) | $678.26 | ($3,832.04) |
| | | | | | | | |
| **Deferred Deposit - Pickup** | | | | | | | |
| Cooper, Emily A | 3/25/2004 3:48:55 PM | #145 Due 3/25/2004 3:48:55 PM 15.0 | AAA | | $235.29 | ($35.29) | $200.00 |
| Cooper, Emily A | 5/24/2004 9:46:33 AM | #157 Due 5/24/2004 9:46:33 AM 15.0 | JMV | | $394.46 | ($59.17) | $335.29 |
| Cooper, Emily A | 7/7/2004 9:44:27 AM | #171 Due 7/7/2004 9:44:27 AM 15.00 | JMV | | $224.22 | ($33.63) | $190.59 |
| Cooper, Emily A | 11/22/2004 6:09:17 PM | #230 Due 11/22/2004 6:09:17 PM 15. | EVP | | $470.59 | ($70.59) | $400.00 |
| Cooper, Emily A | 2/4/2005 11:43:01 AM | #222 Due 2/4/2005 11:43:01 AM 15.0 | EVP | | $352.94 | ($52.94) | $300.00 |
| Cooper, Emily A | 3/10/2005 12:53:24 PM | #241 Due 3/10/2005 12:53:24 PM 15. | EVP | | $456.75 | ($68.51) | $388.24 |
| **Total for Deferred Deposit - Pickup** | | **Count 6** | | | $2,134.25 | ($320.13) | $1,814.12 |
| | | | | | | | |
| **Deferred Deposit - Replaced** | | | | | | | |
| Cooper, Emily A | 4/10/2004 5:02:23 PM | #103 Due 4/10/2004 5:02:23 PM 15.0 | JMV | | $512.11 | ($76.82) | $435.29 |
| Cooper, Emily A | 4/26/2004 9:43:21 AM | #110 Due 4/26/2004 9:43:21 AM 15.0 | JMV | | $512.11 | ($76.82) | $435.29 |
| Cooper, Emily A | 5/7/2004 12:20:58 PM | #124 Due 5/7/2004 12:20:58 PM 15.0 | JMV | | $512.11 | ($76.82) | $435.29 |
| Cooper, Emily A | 6/10/2004 2:45:36 PM | #163 Due 6/10/2004 2:45:36 PM 15.0 | JMV | | $470.59 | ($70.59) | $400.00 |
| Cooper, Emily A | 6/24/2004 5:22:58 PM | #164 Due 6/24/2004 5:22:58 PM 15.0 | JMV | | $341.87 | ($51.28) | $290.59 |
| Cooper, Emily A | 10/20/2004 4:12:28 PM | #199 Due 10/20/2004 4:12:28 PM 15. | AAA | | $588.24 | ($88.24) | $500.00 |
| Cooper, Emily A | 11/5/2004 4:51:24 PM | #202 Due 11/5/2004 4:51:24 PM 15.0 | AAA | | $470.59 | ($70.59) | $400.00 |

| Cooper, Emily A | 1/5/2005 9:50:17 AM | #212 Due 1/5/2005 9:50:17 AM 15.00 | EVP | $470.59 | ($70.59) | $400.00 |
| Cooper, Emily A | 1/21/2005 11:11:39 AM | #219 Due 1/21/2005 11:11:39 AM 15. | EVP | $470.59 | ($70.59) | $400.00 |
| Cooper, Emily A | 2/21/2005 4:18:41 PM | #224 Due 2/21/2005 4:18:41 PM 15.0 | AAA | $588.24 | ($88.24) | $500.00 |
| Cooper, Emily A | 4/18/2005 3:33:32 PM | #251 Due 4/18/2005 3:33:32 PM 15.0 | EVP | $588.24 | ($88.24) | $500.00 |
| **Total for Deferred Deposit - Replaced   Count 11** | | | | $5,525.28 | ($828.82) | $4,696.46 |

**Deferred Deposit - New Replacement**

| Cooper, Emily A | 4/10/2004 5:02:23 PM | #103 Due 4/10/2004 5:02:23 PM 15.0 | JMV | ($512.11) | $76.82 | ($435.29) |
| Cooper, Emily A | 4/26/2004 9:43:21 AM | #110 Due 4/26/2004 9:43:21 AM 15.0 | JMV | ($512.11) | $76.82 | ($435.29) |
| Cooper, Emily A | 5/7/2004 12:20:58 PM | #124 Due 5/7/2004 12:20:58 PM 15.0 | JMV | ($394.46) | $59.17 | ($335.29) |
| Cooper, Emily A | 6/10/2004 2:45:36 PM | #163 Due 6/10/2004 2:45:36 PM 15.0 | JMV | ($341.87) | $51.28 | ($290.59) |
| Cooper, Emily A | 6/24/2004 5:22:58 PM | #164 Due 6/24/2004 5:22:58 PM 15.0 | JMV | ($224.22) | $33.63 | ($190.59) |
| Cooper, Emily A | 10/20/2004 4:12:28 PM | #199 Due 10/20/2004 4:12:28 PM 15. | AAA | ($470.59) | $70.59 | ($400.00) |
| Cooper, Emily A | 11/5/2004 4:51:24 PM | #202 Due 11/5/2004 4:51:24 PM 15.0 | AAA | ($470.59) | $70.59 | ($400.00) |
| Cooper, Emily A | 1/5/2005 9:50:17 AM | #212 Due 1/5/2005 9:50:17 AM 15.00 | EVP | ($470.59) | $70.59 | ($400.00) |
| Cooper, Emily A | 1/21/2005 11:11:39 AM | #219 Due 1/21/2005 11:11:39 AM 15 | EVP | ($352.94) | $52.94 | ($300.00) |
| Cooper, Emily A | 2/21/2005 4:18:41 PM | #224 Due 2/21/2005 4:18:41 PM 15.0 | AAA | ($456.75) | $68.51 | ($388.24) |
| Cooper, Emily A | 4/18/2005 3:33:32 PM | #251 Due 4/18/2005 3:33:32 PM 15.0 | EVP | ($352.94) | $52.94 | ($300.00) |
| **Total for Deferred Deposit - New Repla   Count 11** | | | | ($4,559.17) | $683.88 | ($3,875.29) |

| **Total** | | | | | $211.19 | ($1,196.75) |

# EXHIBIT D

# In The Justice Court,
# County of Pima, State of Arizona

HON. JIM GREEN
Justice OF THE PEACE
PRECINCT NO. 5

CASE NO.   CV04-023315

HEARING DATE:   05-04-05

DECISION DATE:   05-11-05

QC Financial Services Inc.
PLAINTIFF(S)

Gary Brouillette, Pro Hac Vice
John McFadden, Jr.
PLAINTIFF'S ATTORNEY

Angela Randolph
DEFENDANT(S)

Gary Urman
DEFENDANT'S ATTORNEY

## MINUTE ENTRY

Regardless of ones opinion as to the type of business which QC Financial conducts, or of the outrageous high interest charged, this type of business is authorized in this state. An arbitration clause is standard procedure, and it must be presumed that the legislature supports this since there has been ample opportunity for legislation action to prohibit such.

This leaves one with the specific issue in this case. In this case exhibit 2 is a contract between QC Financial and the defendant. This exhibit clearly indicates,

2.  You acknowledge and agree that by entering into this Arbitration Provision:

(a)  YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;

(b)  YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and

(c)  YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER RERESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

3.  Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or

CV
Page 2 of 2

related third parties shall be resolved by binding arbitration only on an individual basis with you. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

This is no hidden, tucked away, etc. provision which might be construed as unconscionable. The defendant knew what she was doing at the time of the first contract, and at each subsequent contract. She is bound by the contract.

Therefore in this case:

A. Defendants counterclaim is dismissed

B. The case may proceed in small claims and/or in arbitration.

C. All subpoena's are quashed

It is so ordered this _11_ day of _MAy_, 2005.

Jim Green
Justice of the Peace

cc: _____ Plaintiff (atty) _____ Defendant (atty)

Parties notified by _____ phone or _____ fax

# EXHIBIT E

FILED
PATRICIA A. NOLAND
CLERK, SUPERIOR COURT

06 JAN 20 AM 9: 15

BY: R. ST. GERMAINE, DEPUTY

ARIZONA SUPERIOR COURT, PIMA COUNTY

JUDGE: HON. JOHN F. KELLY

COURT REPORTER:   NONE

CASE NO.   C20053582

DATE:      January 19, 2006

Q.C. FINANCIAL SERVICES, INC.
     Plaintiff/Appellee,
vs.

ANGELA RANDOLPH,
     Defendant/Appellant.

## RULING

M-BOOK RULING RE APPEAL FROM PIMA COUNTY JUSTICE COURT ORDER DISMISSING DEFENDANTS COUNTERCLAIM AND ORDERING THAT THE CASE PROCEED IN SMALL CLAIMS OR ARBITRATION

Plaintiff (Q.C. Financial) is a Missouri corporation doing business in Arizona as a deferred presentment company providing payday loans pursuant to A.R.S. § 6-1251 et seq. Defendant (Randolph) is a borrower who obtained a loan or loans from Q.C. Financial. In connection with her loans Randolph signed preprinted contract forms which included an arbitration provision in which Randolph waived her right to bring a class action. The arbitration provision states that it is "made pursuant to a transaction involving interstate commerce and shall be governed by the FAA [Federal Arbitration Act]."(Exhibit b attached to appellee's memorandum). Randolph admits that she did not read the preprinted contract forms and does not know what arbitration is. She contends that the contract is unenforceable because it is beyond the reasonable expectations of the customers, is unconscionable and is void as against public policy.

It can not be seriously disputed that the contract was a contract of adhesion. However, contracts of adhesion are enforceable unless a provision of the contract violates the reasonable expectations of the adhering party or is unconscionable. Broemmer v. Abortion Services of Phoenix, Ltd., 173 Ariz. 148,

Christine Fleck
Judicial Administrative Assistant

1-19-06

RULING

| Page: 2 | Date: January 19, 2006 | Case No: **C20053582** |

151, 840 P 2d 1013, 1016 (1992).  The doctrine of reasonable expectations "relieves a party from certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them." Philadelphia Indemnity Insurance Company v. Barrera, 200 Ariz. 9, 14, 21 P.3d 395, 400 (2001).

Randolph argues that the facts in this case closely parallel the facts in Broemmer.  She ignors important differences however  There is no evidence that Randolph faced the kind of emotional stress that was present in Broemmer.  Also, the waiver provisions in this case were conspicuous and explicit. In Broemmer the waiver of a jury trial was implied in the agreement to arbitrate.  And, unlike a patient preparing to enter surgery as in Broemmer, a consumer preparing to enter into a loan transaction should reasonably expect that his or her disputes with the lender may be subject to binding arbitration.

It is not the arbitration provision itself which is claimed to violate Randolph's reasonable expectations but the waiver of the right to participate in a class action.  Randolph probably did not have any expectation of being able to pursue a class action, but she would have reasonably expected to arbitrate the dispute under the FAA or proceed in small claims court.  The agreement did not violate her reasonable expectations. Also, the precise language contained in the arbitration provision in this case has been found to not be unconscionable. Jenkins v. First American Cash Advance of Georgia, LLC., 400 F.3d 868, 879 (11th Cir. 2005).

Finally, this arbitration provision does not violate Arizona public policy. " The public policy of Arizona favors arbitration . . . . [A]rbitration clauses are construed liberally and any doubts about whether a matter is subject to arbitration are resolved in favor of arbitration." City of Cottonwood v. James L. Fann Contracting Inc., 179 Ariz. 185, 189, 877 P.2d 284, 288 (App. 1994).  Therefore,

IT IS ORDERED the decision of the Pima County Justice Court is AFFIRMED.

IT IS FURTHER ORDERED this matter be remanded to Justice Court for all further proceedings.

Christine Fleck
Judicial Administrative Assistant

1-19-06

RULING

Page: 3                    Date:  January 19, 2006              Case No:  C20053582

cc:    Hon. John F. Kelly
       Gary F. Urman, Esq
       John McFadden, Jr., Esq.
       Gary Brouillette, Esq./James Lloyd, Esq., Seigfried, Bingham, Levy, Selzer & Gee -
          911 Main Street, Suite 2800, Kansas City, Missouri  64105

 

 

Christine Fleck
Judicial Administrative Assistant

*1-19-06*