IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emily Cooper, individually and as representative of all others similarly situated,<br><br>                    Plaintiff,<br><br>vs.<br><br>QC Financial Services, Inc.,<br><br>                    Defendant. | No. CV 06-10-TUC-FRZ (HCE)<br><br>**REPORT & RECOMMENDATION** |

Pending before the Court is Defendant's Motion to Dismiss or in the Alternative to Compel Arbitration and Stay Proceedings. On September 14, 2006, the Magistrate Judge heard oral argument on Defendant's Motion.  For the following reasons, the Magistrate Judge recommends that the District Court deny in part and grant in part Defendant's Motion.

## I.  FACTUAL & PROCEDURAL BACKGROUND

This lawsuit was originally filed in Arizona state court on September 15, 2005 by Plaintiff Ms. Emily Cooper "by and through her counsel... individually and as representative of a class of all others similarly situated." (Complaint, p.1)  Plaintiff named as the sole Defendant QC Financial Services, Inc., a company which is in the business of providing

"payday loans"[1] to the public.  (Id.; Defendant's Memorandum of Points and Authorities in Support of Its Motion to Dismiss or in the Alternative to Compel Arbitration and Stay Proceedings (hereinafter "Defendant's Memorandum") p.2)

On January 11, 2006, Defendant QC Financial Services, Inc.,  filed a notice of removal indicating that this Court had original and diversity jurisdiction.

Plaintiff's Complaint sets out the following eight counts: (1) Violation of Deferred Presentment Companies Statutes, A.R.S. § 6-1251, *et seq.*; (2) Breach of Contract; (3) Fraudulent Misrepresentation; (4) Negligent Misrepresentation; (5) Negligence Per Se; (6) Racketeering: Pattern of Unlawful Activity pursuant to A.R.S. § 13-2301, *et seq.*; (7) Unjust Enrichment; and (8) Declaratory Judgment.  Plaintiff's claims arise from one or more loans, altogether totaling a principal amount of $500, that she obtained from Defendant in 2003.[2] (Complaint, p.2)  "Each two weeks after Ms. Cooper obtained her initial loan, she returned to the Q.C. Financial office and made a payment to 'roll-over' the loan.  When her loan was

---

[1]"In general, payday loans are small-dollar, short-term loans with high interest rates. In such transactions, a borrower receives a modest cash advance that becomes due for repayment within a short period of time, usually about 14 days. As security for the loan, the borrower gives a check to the payday lender in the amount of the cash advance, plus the interest" and/or fee charged by the lender. *Jenkins v. First American Cash Advance of Georgia,* 400 F.3d 868, 871(11th Cir. 2005). Plaintiff herein alleges that Defendant charged her a fee that exceeded 15% of the amount borrowed. (Plaintiff's Opposition, p.3)  Plaintiff alleges that "[t]he annual percentage rate charged for sums advanced frequently exceeds four hundred (400%)." (Complaint, p.3) "When the loan is due, the borrower may redeem the check for cash, allow the check to be cleared through the bank, or pay another fee to extend the loan until the next payday." (Id., at p.2)

[2]In her Complaint, Plaintiff alleges that she obtained the loans in or about 2003. (Complaint, p.2) In an affidavit attached to her Opposition, Plaintiff states that in March 2004 she obtained a payday loan in the amount of $200 from Defendant. (Plaintiff's Affidavit, attached to Plaintiff's Opposition) Defendant submits a Customer Application and Deferred Presentment Agreement both signed by Plaintiff on March 12, 2004. (Defendant's Memorandum, Ex. A, B) According to Defendant, "Plaintiff subsequently entered into various loan agreements and Deferred Presentment Agreements between March 12, 2004 and May 25, 2005." (Defendant's Memorandum, p.2)

increased to $500.00 the fee she paid every two weeks was approximately $88.00....Ms. Cooper made $88.00 payments every two weeks, and her loan was 'rolled-over' every two weeks, for approximately six to nine months.  By that time, Ms. Cooper had paid fees totaling between $1,000.00 and $1,500.00 for her $500.00 payday loan."  (Id. at p.3) According to Plaintiff, during the time she continued to roll her loan over, Defendant charged her fees that exceeded the 15% permitted by Arizona statute.  (Id. at p. 4; Plaintiff's Opposition, p.3 (citing A.R.S. § 6-1260)) "Altogether, Ms. Cooper was charged fees totaling $1,395.44 for her payday loans."  (Plaintiff's Opposition, p.3) Plaintiff does not seek "any of the principal amount of the loan to be repaid."  (TR. p.63) The figure "alleged in the Complaint represents the amount that Ms. Cooper alleges that she paid in fees."  (Id.)

Defendant moves to dismiss the instant action, or in the alternative, to compel arbitration and stay proceedings.  At issue herein is whether Plaintiff's claims are subject to arbitration in light of a Customer Application (hereinafter "Application") and Deferred Presentment Agreement (hereinafter "Agreement") that she completed in order to obtain the loans.  The Application, which Plaintiff signed on March 12, 2004, indicates that Plaintiff was 21 on that date; was employed as an optician earning $420; sometimes received additional income from her mother; and was referred to Defendant by a customer named Angela Randolph.  (Defendant's Memorandum, Ex. A) The Application contained the following provision regarding arbitration:

**ARBITRATION AND WAIVER OF JURY TRIAL:** Arbitration is a means for legal matters between parties to be resolved by a neutral arbitrator rather than a Court.  We have a policy of arbitrating all claims, demands, and disputes which cannot be resolved in a small claims tribunal, including the scope and validity of this arbitration provision and any right you may have to participate in an alleged class action (hereinafter "dispute(s)").  *All customer agreements contain another arbitration provision that supercedes this arbitration provision and governs the resolution of disputes.*  However, if you do not enter into a customer agreement with us, then this arbitration provision governs the resolution of disputes [sic]  You agree that **YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY to resolve disputes against us, our agents and/or owners.**  The Federal Arbitration Act governs this arbitration provision.  If either party has a dispute, they must notify the other in writing of the dispute.  You have the right to select any of the following arbitration organizations, which will govern the arbitration under its consumer

rules: American Arbitration Association.., J.A.M.S./Endispute..., or National Arbitration Forum..., and *we will advance all of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees. You will be responsible for your attorney's fees, if any. Any appeal of a judgment from a small claims tribunal* <u>*shall*</u> *be resolved by binding arbitration.   The arbitrator shall not conduct class arbitration.*   The arbitration hearing will be conducted in the county in which this Customer Application was signed.

You acknowledge that the information provided on this Application is accurate to the best of your knowledge and information...You agree to the terms of the **"Arbitration and Waiver of Jury Trial"** provision.

(Defendant's Memorandum, Ex. A (emphasis by bold, underlined, and capital lettering in original; emphasis by italics added))

On March 12, 2004, Plaintiff also signed an Agreement promising to pay the principal amount of $235.29 borrowed at that time[3] "plus service fee at the rate of 459.90[4] per year according to the Payment Schedule as disclosed" elsewhere in the document.  (Defendant's Memorandum, Ex. B) The Agreement contained the following concerning arbitration:

### ADDITIONAL TERMS AND CONDITIONS OF THE DEFERRED PRESENTMENT AGREEMENT

Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an larbitrator)) [sic] for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator.   Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials.   The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment.  A court rarely overturns an arbitrator's decision **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**
1. For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "we", "us" and "our" mean QC Financial Services, Inc [sic] d/b/a/ Quick Cash.  The words "you" and "your" mean the customer who has signed below [sic] Furthermore, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or

---

[3]That amount consisted of $200 that was paid directly to Plaintiff and a $35.29 finance charge, thus resulting in the "[t]otal amount financed with us: $235.29."  (Defendant's Memorandum, Ex. B)

[4]It appears that a percent sign is missing and the figure should read: 459.90%.  *(See* Defendant's Memorandum, Ex. B)

relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Deferred Presentment Agreement (including the Arbitration Provision)...; (c) all counterclaims, cross-claims, and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) *all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims")....*

2.   *You acknowledge and agree that by entering into this Arbitration Provision:*

**(a)     YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**

**(b)     YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**

**(c)     YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

3.   *Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you.* ***THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.***

4.   ...Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association...; J.A.M.S./Endispute...,or National Arbitration Forum....However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules....The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this

Deferred Presentment Agreement or the Arbitration Provision, including the limitations on the arbitrator below....

5.  *If you demand arbitration, then at your request we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). If related third parties or we demand arbitration, then at your written request we will advance your portion of the Arbitration Fees. Throughout the arbitration, each party shall bear his or her own attorneys' [sic] fees and expenses, such as witness and expert witness fees.* The arbitrator shall apply applicable substantive law consistent with the FAA,[5] applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under this Deferred Presentment Agreement occurred, or in such other place as shall be ordered by the arbitrator....*If allowed by statute or applicable law, the arbitrator may award you expert witness fees, statutory damages and/or your reasonable attorneys' [sic] fees and expenses....*The arbitrator's award may be filed with any court having jurisdiction. *Regardless of whether the arbitrator renders a decision or an award in your favor resolving the dispute, you will not be responsible for reimbursing us for your portion of the Arbitration Fees.*

6.  All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. *Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.*

7.  This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Arizona.

8.  This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. The Arbitration Provision is binding upon and benefits us....The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing [sic]

**You acknowledge that you have read, understand, and agree to the terms of the Deferred Presentment Agreement, including the Additional Terms and Conditions set forth above, and that you have received a complete copy of such** [sic]

(Defendant's Memorandum, Ex. B (emphasis by bold and capital lettering in original; emphasis by italics added))

-------------------------------------------------------

[5]The meaning of "FAA" is never explained to the signatory.

Plaintiff, through affidavit, states she was told that she was required to sign "the agreement"; the agreement forms were not explained to her; and she did not read all of their terms.  (Plaintiff's Affidavit attached to Plaintiff's Opposition)

Defendant argues that Plaintiff is bound to arbitrate pursuant to the Agreement. (Defendant's Memorandum, p.6)  Plaintiff contends that Defendant waived arbitration and, alternatively, the arbitration provision is unenforceable because it is unconscionable and in violation of public policy.

## II.  DISCUSSION

### A.  Waiver

Plaintiff argues that Defendant waived arbitration when it removed this action.  "It is well-established...that a party to a contract may waive its right to enforce an arbitration agreement by its conduct.....Unless the repudiation is clear, however, the court should not infer it."  *Meineke v. Twin City Fire Insur. Co.,* 892 P.2d 1365, 1370 (Ariz. App. 1994) (citations omitted).  "[P]roof of waiver requires showing conduct inconsistent with the arbitration remedy....Inconsistency usually is found when one party engages in conduct preventing arbitration, proceeds at all times in disregard of arbitration, expressly agrees to waive arbitration, or unreasonably delays requesting arbitration."  *City of Cottonwood v. James L. Fann Contracting, Inc.,* 877 P.2d 284, 289-290 (Ariz. App. 1994) (footnote omitted) (*citing EFC Develop. Corp. v. F.F. Baugh Plumbing & Heating, Inc.,* 540 P.2d 185 (1975)). *See also Bolo Corp. v. Homes & Son Constr. Co.,* 464 P.2d 788, 793 (Ariz. 1970) ("when...plaintiff sought redress through the courts, in lieu of the arbitration tribunal, and asked the court for exactly the same type of relief (i.e. damages), which an arbitrator is empowered to grant, it waived the right to thereafter arbitrate the controversy over the protest of the defendant.")  Thus, "a party's filing of a lawsuit without invoking arbitration...would nearly always indicate a clear repudiation of the right to arbitrate..., and the filing of an answer normally has the same effect."  *Meineke,* 892 P.2d at 1371.  (even though the defendant's answer reserved the right to demand arbitration or appraisal, the fact that the

defendant did not request same "simultaneously with filing its answer...indicated a repudiation").

The record in the instant action reflects that on December 23, 2005 Defendant was served with the Complaint. (Defendant's Notice of Removal, p.2)  On January 11, 2006 Defendant filed its notice of removal and "[n]o proceedings ha[d] occurred in the state court in relation to this lawsuit as of the date of...removal"[6] (Id.), on January 19, 2006 the parties filed a Stipulation for Extension of Time to Answer or Otherwise Plead which the Court granted the following day, and on February 1, 2006, Defendant filed the instant Motion to Dismiss or in the Alternative to Compel Arbitration and Stay Proceedings.

Plaintiff initiated her suit. Defendant merely selected the forum in which it would file its Motion to Dismiss or in the Alternative to Compel Arbitration. Defendant did not file an Answer or a counterclaim[7] prior to filing its motion to enforce the arbitration provision.  Nor did Defendant delay an unreasonable amount of time to seek arbitration.  To the contrary, Defendant's prompt "attempt to compel arbitration...shows that it had not voluntarily relinquished its right to arbitrate." *City of Cottonwood,* 877 P.2d at 290.  Defendant did not waive its right to seek arbitration herein because nothing in Defendant's conduct was "inconsistent with the use of the arbitration remedy" or showed "an intent not to arbitrate."

---

[6]Cases cited by both parties to support their arguments regarding whether arbitration should be compelled  were decided in federal court upon consideration of defendants' motions to compel arbitration filed subsequent to removal. *Jenkins,* 400 F.3d at 870 ("After removing the case to federal court, Defendants moved to stay the court proceedings and compel arbitration."); *Ticknor v. Choice Hotels Int'l. Inc.,* 265 F.3d 931 (9th Cir. 2001) (defendant removed action to federal court and filed a motion to dismiss or, alternatively, to compel arbitration).  *See also Bosinger v. Phillips Plastics Corp.,* 57 F.Supp.2d 986 (S.D. Cal. 1999) (removed by the defendant who filed motion to dismiss or stay pending arbitration) (not cited by the parties). None of these cases discussed the issue of waiver.

[7]Curiously, in her Opposition captioned as "Emily A. Cooper...Plaintiff, vs. Q.C. Financial Services, Inc., Defendant," Plaintiff refers to herself as the "Defendant/Counterclaimant Emily Cooper." (Opposition, p.1)  The record does not reflect that a counterclaim was filed.

*Meineke,* 892 P.2d at 1370.

  B.  Plaintiff's Challenges to the Arbitration Provision

   1.  Standard

   Congress enacted the Federal Arbitration Act, (hereinafter "FAA"), 9 U.S.C. §§ 1-16, to overcome judicial resistance to arbitration.  *Buckeye Check Cashing, Inc. v. Cardegna,* __ U.S. __ , 126 S.Ct. 1204, 1207 (2006).  Section 2 of the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts" by providing that written agreements to arbitrate disputes "'shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 1207-1208 (quoting 9 U.S.C. § 2).  *See also Ticknor,* 265 F.3d at 936.  "Thus, generally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening section 2.'" *Ticknor,* 265 F.3d at 937 (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686 (1996)).  *See also Buckeye Check Cashing, Inc.,* __ U.S. __, 126 S.Ct. at 1209 (with respect to such challenges to arbitration agreements, "an arbitration provision is severable from the remainder of the contract.")     However, courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions.  *Ticknor,* 265 F.3d at 937.  Moreover, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."   *Buckeye Check Cashing, Inc.,* __ U.S. __, 126 S.Ct. at 1209-1210. Therefore, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator instead of the court.  *Id.  See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-404 (1967) ("if the claim is fraud in the inducement of the arbitration clause itself–an issue which goes to the making of the agreement to arbitrate–the federal court may proceed to adjudicate it...the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." (footnote omitted)); *Ticknor,* 265 F.3d at 937 ("the role of the federal courts in these circumstances is limited: the sole

question is whether the arbitration clause at issue is valid and enforceable under section 2 of the Federal Arbitration Act.") "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" and the district court must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue. *Simula Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719 (9th Cir. 1999) (citation omitted).

Defendant argues that Plaintiff's allegations in her Complaint do "not challenge the arbitration provision in the agreements but rather attacks the agreements themselves" as a whole. (Defendant's Reply, p.2) Defendant points out that "[a]ll but one of [Ms.]Cooper's eight count Complaint take issue with the total amount of fees charged and the number of rollovers allowed by the agreements, challenging the entire agreement, not just the arbitration provision." (Id. at pp. 2-3) Defendant also cites paragraph eight of Plaintiff's prayer for relief requesting "'an order declaring deferred presentments made by QC Financial to Emily Cooper and members of the class to be void *ab initio* pursuant to A.R.S. § 6-1262(D); and directing the repayment of all fees charged by QC Financial.'" (Id. at p. 3 (quoting Complaint, p. 11, ¶8) According to Defendant, such allegations and prayer for relief seeking to invalidate the agreement as a whole are matters under *Buckeye* and *Prima Paint* to be considered by the arbitrator in the first instance.

Plaintiff alleges in Count Eight of her Complaint that the provisions requiring arbitration and prohibiting class action claims "are unenforceable as adhesive contract provisions that are outside the reasonable expectations of Ms. Cooper and members of the Class, are unconscionable, and are void as against public policy." (Complaint, p. 10, ¶66); (*see also* Id., p.11, ¶67 ("Ms. Cooper and other Class members are entitled to a judicial declaration that arbitration provisions in the agreements that prohibit class claims and class relief are unenforceable.")) Plaintiff's prayer for relief also specifically seeks declaratory judgment that the "arbitration provisions within Q.C. Financial's contracts, which prohibit class claims, are unenforceable." (Complaint, p.11, ¶2)

Plaintiff argues that the arbitration provision, and not the agreement as a whole, are

unenforceable as unconscionable and against public policy.  "Because unconscionability is a generally applicable contract defense, it may be applied to invalidate an arbitration agreement without contravening section 2 of the FAA." *Ting v. AT&T,* 319 F.3d 1126, 1150 n.15 (9th Cir. 2003) (*citing Doctor's Assocs.,* 517 U.S. at 687). *See also Ticknor,* 265 F.3d at 937 (finding arbitration agreement unconscionable under Montana law); *Muhammad v. County Bank of Rehoboth Beach, Delaware,* __ A.2d __, 2006 WL 2273448 (N.J. Supreme Court August 9, 2006) (because the "distinct class-arbitration waivers" are within the arbitration clauses, they are "part of the arbitration agreements, and not part of the contracts as a whole...we are empowered to address" issue of unconscionability directed at such waivers).  A plain reading of Plaintiff's Complaint reveal that she has raised "grounds...'at law or in equity'" specific to the arbitration provision and that is the portion of Plaintiff's Complaint which is at issue in the present Motion.  9 U.S.C. § 2.  Therefore, the Court has jurisdiction to address Plaintiff's claims directed solely to the arbitration provision.  *see Buckeye Check Cashing, Inc.,* __ U.S. __, 126 S.Ct. at 1209-1210.

### 2.  Assessment of the Arbitration Provision

"To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170 (9th Cir. 2003) (citation omitted).

Defendant concedes that the contract, which encompasses the arbitration provision herein, is adhesive.  (TR. p. 8)  "An adhesion contract is typically a standardized contract form 'offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form of contract...`[t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms.'" *Broemmer v. Otto,* 840 P.2d 1013, 1015-1016 (Ariz. 1992) (*quoting Wheeler v. St. Joseph Hosp.,* 133 Cal. Rptr. 775, 783 (App. 1976)).  The arbitration provision herein is part of a standardized form contract.  The arbitration terms

were offered on a take it or leave it basis.[8]  By essentially removing from courts any potential "claims, disputes, or controversies" (Defendant's Memorandum, Ex. B) the arbitration provision leaves Plaintiff with no meaningful avenue of redress through the courts,[9] while at the same time "the drafter inserted additional terms potentially advantageous to itself," *Broemmer,* 840 P.2d at 1016, by prohibiting Plaintiff from initiating or participating in a class action against Defendant."[10]   QC Financial staff did not explain the arbitration provision to Plaintiff.  Staff represented to Plaintiff that she was required to sign the agreements containing the arbitration provision in order to accomplish the loan transaction. Plaintiff had no realistic choice as to the terms of the arbitration provision.  Under Arizona "general contract law" the provision at issue constitutes an agreement of adhesion.  *See Broemmer,* 840 P.2d at 1016.

The conclusion that the arbitration provision is adhesive does not necessarily portend resolution in Plaintiff's favor.  "[A] contract of adhesion is fully enforceable according to its terms...unless certain other factors are present which, under established legal rules–legislative or judicial–operate to render it otherwise."  *Id.* (*citing Graham v. Scissor-Tail, Inc.,* 623 P.2d 165, 172 (Cal. 1981)) Applying such judicial limitations, courts will not enforce a contract

---

[8]Consistent with *Buckeye,* this Court's analysis is focused on the arbitration provision in the contract and not on the contract in its entirety.

[9]At least one court has recognized that the American Arbitration Association Consumer Due Process Protocols state that consumer arbitration agreements should offer all parties the option of seeking adjudication in a small claims tribunal. *Jenkins,* 400 F.3d at 879 (enforcing arbitration agreement that permitted small-claims actions and any appeal therefrom would be resolved by arbitration).  Any support such a provision may provide to Defendant is severely undercut by the contractual requirement herein that any appeal of a judgment from small claims court "shall be resolved by binding arbitration." (Defendant's Memorandum, Ex. B)

[10]The American Arbitration Association and J.A.M.S./Endispute have promulgated procedures for class actions within arbitration proceedings.  *Harrington* v. *Pulte Home, Corp.,* 119 P.3d 1044, 1055 (Ariz. App. 2005) (American Arbitration Association); http://www.adr.org;  http://www.jamsadr.com.

of adhesion that is unduly oppressive or unconscionable.  *Id.* (*citing Graham* at 623 P.2d at 172-173); *Huff v. Bekins Moving & Storage Co.,* 702 P.2d 1341, 1343 (Ariz.  App. 1985). *See also Maxwell v. Fidelity Financial Services, Inc.,* 907 P.2d 51, 57 (Ariz. 1995) (en banc) (unconscionability is a distinct ground for invalidating or limiting the enforcement of a contract); *Szetela v. Discover Bank,* 118 Cal.Rptr.2d 862, 868 (App. 2002) ("While adhesive arbitration provisions are not per se unconscionable, there may be arbitration provisions which do give an advantage to one party...[i]n those cases...it is not the requirement of arbitration alone which makes the provision unfair but rather...the manner in which the arbitration is to occur" that would support a finding of unconscionability.)

Arizona courts have recognized that "'[a] bargain is 'unconscionable' if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Phoenix Baptist Hosp. & Med. Ctr., Inc.,  v. Aiken,* 877 P.2d 1345, 1349 (Ariz.App. 1994) *(quoting Broemmer v. Otto,* 821 P.2d 204, 208 (Ariz. App. 1991), *rev'd in part on other grounds,* 840 P.2d 1013, 1018).   A contract may be procedurally unconscionable and/or substantively unconscionable. *Maxwell,* 907 P.2d at 58-59; *(see also* Defendant's Memorandum, p. 9; Plaintiff's Opposition, p. 8).   The Arizona Supreme Court has held that "a claim of unconscionability can be established with a showing of substantive unconscionability alone, especially in cases involving...limitation of remedies." *Maxwell,* 907 P.2d at 59.   The Arizona court left "for another day the questions involving the remedy for procedural unconscionability alone." *Id.*   The determination of unconscionability is to be made by the court as a matter of law.  *Harrington*,  119 P.3d at 1055 (*citing Maxwell,* 907 P.2d at 56).

a.  Procedural Unconscionability

Procedural unconscionability "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell*, 907 P.2d at 57-58.  Thus, "[u]nder the procedural rubric, courts examine factors influencing the bargaining process: 'the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power...[and] whether there were alternative sources of supply of the goods in question.'" *Southwest Pet Products, Inc. v. Koch Indus.* 107 F.Supp.2d 1108, 1113 (D.Ariz. 2000) (*quoting Maxwell,* 907 P.2d at 58).

The procedural unconscionability analysis herein focuses on the manner in which the arbitration provision was presented to the party with the weaker bargaining power, i.e. Ms. Cooper. The arbitration provisions at issue herein were unilaterally drafted by Defendant and presented to the then 21-year-old  Plaintiff on a take-it-or-leave-it basis.  No explanation  of the arbitration provision was provided to Plaintiff.  Plaintiff has a high school education in addition to "some college credits" from a local community college.  (Plaintiff's Affidavit attached to Plaintiff's Opposition)  Plaintiff "was told that [she] was required to sign the agreements" that contained the arbitration provisions. (Id.)  When she could not afford to pay off her loan, Plaintiff believed that her "only option was to extend the loan....I believed that if I wanted to extend the loan, I had to sign the agreement that was put before me."  (Id.)  When Plaintiff signed the agreements, she had not read all of the terms and she did not know what arbitration was.[11]  (Id.)

Defendant argues that the provision is not procedurally unconscionable because there

---

[11]That Plaintiff did not read all of the terms has little bearing.  *See Darner Motor Sales, Inc. v. Universal Underwriters Insur. Co.,* 682 P.2d 388, 399 (Ariz. 1984)(footnote omitted) (indicating reluctance to enforce critical terms of "contracts (or parts of contracts) made up of standardized forms which, because of the nature of the enterprise, customers will not be expected to read and over which they have no real power of negotiation.")

is no evidence that when Plaintiff entered into the agreement, she was rushed, under a great deal of emotional stress, or the atmosphere was in any other way "tension laden." (Defendant's Reply, p.5 *(citing Broemmer,* 840 P.2d 1013;  *Phoenix Baptist Hosp.,* 877 P.2d 1345)).  *Broemmer*, is distinguishable.  In *Broemmer*, the court declined to address the issue of unconscionability and instead held that the contract of adhesion at issue, which required arbitration, was unenforceable because it was outside the plaintiff's reasonable expectations, especially given the unique circumstances of that case including that the plaintiff was under a great deal of stress at the time. *Broemmer,* 840 P.2d 1013 (involving agreement to arbitrate disputes arising out of the defendant's performance of abortion for the plaintiff-patient). While the atmosphere surrounding the signing of the contract may certainly be considered when resolving the issue of procedural unconscionability, *see Phoenix Baptist Hosp.,* 877 P.2d at 293-294 (fact that the plaintiff "hurriedly signed the preprinted agreement in order to obtain emergency medical care for" his wife factored into procedural unconscionability finding), the weaker party's age, education, intelligence, business acumen and experience, and relative bargaining power are also relevant. *See Maxwell,* 907 P.2d at 57-58; *Southwest Pet Products*, 107 F.Supp.2d at 1113. *See also Ingle,* 328 F.3d at 1171 (finding procedural unconscionability "because of the stark inequality of bargaining power between" the plaintiff and defendant).

The circumstances in the present case surrounding the unilateral drafting and the manner of presentation of the agreement to someone of Plaintiff's age and educational background on a take-it-or-leave it basis, in light of Plaintiff's total lack of bargaining power, supports the conclusion that the arbitration provision is procedurally unconscionable.  The Arizona Supreme Court has declined to identify when a showing of procedural unconscionability alone will support denial of enforcement of contract terms.  Plaintiff herein does not suggest that her claim can rest on grounds of procedural unconscionability alone. Instead, the primary emphasis of her argument addresses substantive unconscionability of the arbitration provisions.  Given the lack of Arizona law on the issue of when procedural

unconscionability alone will justify refusal to enforce contractual terms, and given the conclusion discussed *infra* that the provision is also substantively unconscionable, the Court need not address whether Plaintiff's showing of procedural unconscionability is sufficient without more to invalidate the arbitration provisions at issue.

### b.  Substantive Unconscionability

Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed at the time the contract was made. *Southwest Pet Products,* 107 F.Supp.2d. at 1113.  "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Maxwell,* 907 P.2d at 58 (citation omitted).

### (1) Argument

Plaintiff argues that the class-action prohibition set out in the arbitration provision is substantively unconscionable for the following reasons: (1) a class action is the only meaningful mechanism for addressing Plaintiff's consumer claims presented herein; (2) the prohibition is one-sided as only Plaintiff and not Defendant is prohibited from bringing such actions; (3) even if the arbitration clause prevented Defendant from filing a class action, "the practical effect of the waiver would still" favor Defendant given that "it is impossible to imagine a context in which Q.C. Financial would sue its customers in a class-action lawsuit"; (4) Defendant is "fully aware that few customers will go to the time and trouble of suing in small claims court and, therefore, has created for itself virtual immunity from class or representative actions despite their potential merit while suffering no detriment to its own rights." (Plaintiff's Opposition, pp.8-9 (*citing Szetela*, 118 Cal.Rptr. 2d at 867-868))

Defendant argues that Plaintiff relies on "cases in which courts have adhered to an *unquestionably minority view* that finds that a no-class-action provision in an arbitration agreement can make the agreement unconscionable and unenforceable." (Defendant's Reply, p.5 *citing Walther v. Sovereign Bank,* 872 A.2d 735, 750, 751 (Md. App. 2005) (emphasis

added by Defendant))  Defendant urges the court to adopt the reasoning of jurisdictions that "have upheld the validity of arbitration agreements containing no-class-action provisions." (Defendant's Reply, p.8) (citations omitted)

Defendant stresses that the terms of the arbitration provision herein can be distinguished from the provisions at issue in the cases cited by Plaintiff.  Unlike the provisions in the cases cited by Plaintiff, Defendant (1) "undertakes the burden of all arbitration fees at Cooper's request and would be responsible for the arbitration fees regardless of the outcome of the arbitration"; (2) no matter the outcome of the arbitration proceeding, Defendant will not require Plaintiff to reimburse it for her share of the arbitration fees; (3) the arbitrator's decision would be final and binding on Defendant.  (Id. at p.7) Therefore, according to Defendant, plaintiff "cannot argue that the arbitration provision is not bilateral because she has no disadvantage and bears no cost."  (Id.)

Defendant also submits a decision from the Arizona small claims court in *Q.C. Financial Services, Inc., v. Angela Randolph*[12] and the subsequent decision on appeal in that case.  It appears that QC Financial initiated an action against Ms. Randolph in small claims court and that Ms. Randolph filed a counter claim.  The small claims court dismissed Ms. Randolph's counter claim holding that Ms. Randolph was bound by her agreement to waive her rights: to a jury trial; to a forum other than small claims court; and to serve as a representative or to participate as a member in a class action.[13]  Ms. Randolph appealed that

---

[12]Plaintiff's application indicates that Ms. Angela Randolph referred her to Defendant's business. (Defendant's Memorandum, Ex. A) Ms. Randolph was represented in the state actions by the same attorney who represents Plaintiff herein.  (Defendant's Memorandum, Ex. E).

[13]The precise claims raised in Ms. Randolph's counterclaim are not contained in the record.  The decision from small claims court dismissing her counterclaim focuses on the arbitration clause.  On appeal, the Arizona Superior Court stated "[i]t is not the arbitration provision itself which is claimed to violate Randolph's reasonable expectations but the waiver of the right to participate in a class action."  (Defendant's Memorandum, Ex. E, p.2)

decision to the Arizona Superior Court which affirmed.  Even though the Superior Court found the contract was one of adhesion, the court nonetheless rejected Ms. Randolph's challenge to the prohibition of class actions because Ms. "Randolph probably did not have any expectation of being able to pursue a class action, but she would have reasonably expected to arbitrate the dispute under the FAA or proceed in small claims court.  The agreement did not violate her reasonable expectations."[14] (Defendant's Memorandum, Ex. E, p.2) The court stated that "the precise language contained in the arbitration provision in this case has been found to not be unconscionable."  (Id. (*citing Jenkins*, 400 F.3d at 879))  The court also noted that Arizona public policy favors arbitration.  (Id.)

In another Arizona action against Ms. Randolph, this time filed by Speedy Cash, Inc., Ms. Randolph again filed a counter claim. (Defendant's Notice of Related Decision) She alleged, *inter alia,* that the arbitration provision regarding a payday loan transaction was adhesive; that the arbitration provision was unconscionable; and that the class-action waiver was unlawful.  On appeal of the dismissal of such counter claim, the Arizona Superior Court upheld the arbitration provision, including the class-action waiver, because the provisions were conspicuous, repetitive, and explicit; and because the *Jenkins* court found "the precise arbitration language used in Plaintiff's contract" was not unconscionable under Georgia law. (Id.)  The Superior Court also noted that Arizona public policy favors arbitration.

### (2) Analysis

#### (a) Review of cited authority

Both parties cite cases from various state and federal jurisdictions that they contend support their respective positions.  *See also* William M. Howard, Annotation, *Validity of Arbitration Clause Precluding Class Actions,* 13 A.L.R. 6th 145 (2006); Alan S. Kaplinsky, *A Scorecard on Where Federal and State Appellate Courts and Statutes Stand on Enforcing Class-Action Waivers in Pre-Dispute Consumer Arbitration Agreements,* (PLI Litig. &

---

[14]Plaintiff in her Opposition does not invoke the reasonable expectation doctrine.

Admin. Practice Course, Handbook Series, No. 8588, 2006).[15]  The parties also distinguish each other's cited authority which is a fairly easy task given that each case turns not only on nuances of contract law from jurisdictions other than Arizona, but also on the intricacies of the language used in the specific arbitration clauses  and the different causes of action raised by each particular plaintiff.  Nonetheless, the cases advance rationale that can be used to enforce or reject the arbitration provision at issue herein depending upon the context of the instant Plaintiff's case and the application of Arizona law. A brief discussion of the rationale supporting each party's argument follows.

The line of cases Plaintiff primarily relies upon essentially adopt the reasoning of a California appellate court decision refusing to enforce the arbitration clause in a credit card agreement that prohibited class actions. *Szetela,* 118 Cal. Rptr. 2d 862.  The relevant contract language in that case provided that neither the consumer nor the corporation could "JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CARDMEMBERS WITH RESPECT TO OTHER ACCOUNT, OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY." *Id.* at 864 (emphasis in original).  The *Szetela* court held that the provision was "not only substantively unconscionable, it violates public policy by granting...[the defendant] a 'get out of jail free' card while compromising important consumer rights." *Id.*  at 868.  In reaching this conclusion, the court reasoned that:

> fully aware that few customers will go to the time and trouble of suing in small claims court, Discover has instead sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights...It is the *manner* of arbitration, specifically, prohibiting class or representative actions, we take exception to here. The clause is not only harsh and unfair to Discover customers who might be owed a relatively small sum of money, but it also serves as a disincentive for Discover to avoid the type of conduct that might lead to class action litigation in the first place. By imposing this clause on its customers, Discover has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any,

---

[15]At oral argument, Defendant submitted the Kaplinsky article.

customers will seek legal remedies, and that any remedies obtained will only pertain to that single customer without collateral estoppel effect. The potential for millions of customers to be overcharged small amounts without an effective method of redress cannot be ignored. Therefore, the provision violates fundamental notions of fairness.

While the advantages to Discover are obvious, such a practice contradicts the California Legislature's stated policy of discouraging unfair and unlawful business practices, and of creating a mechanism for a representative to seek relief on behalf of the general public as a private attorney general. (See, e.g., *Bus. & Prof. Code,* § 17200 et. seq.) It provides the customer with no benefit whatsoever; to the contrary, it seriously jeopardizes customers' consumer rights by prohibiting any effective means of litigating Discover's business practices. This is not only substantively unconscionable, it violates public policy....

*Id.* at 867-868. *See also Discover Bank v. Superior Court,* 113 P.3d 1100 (Cal. 2005) (California Supreme Court applying *Szetela* rationale to invalidate class-action waiver in arbitration provision).

The Ninth Circuit, applying California law, has endorsed the *Szetela* court's reasoning to hold that arbitration provisions prohibiting class actions, *inter alia*, are substantively unconscionable. *See Ting,* 319 F.3d at 1150 ("it is not only difficult to imagine AT&T bringing a class action against its own customers, but AT&T fails to allege that it has ever or would ever do so."); *Ingle,* 328 F.3d at 1176 (through such provision, the defendant "seeks to insulate itself from class proceedings while conferring no corresponding benefit to...[plaintiff] in return...because [defendant's] prohibition of class action proceedings in its arbitral forum is manifestly and shockingly one-sided, it is substantively unconscionable.")

Plaintiff cites cases from district courts within the Ninth Circuit and from other state and federal jurisdictions wherein the courts have found class-action waivers in arbitration contracts to be unconscionable.[16]  (Plaintiff's Opposition, pp. 10-13); (TR. p.35)

---

[16]Plaintiff cites the following cases holding that arbitration provisions in consumer contracts that include a class-action waiver were substantively unconscionable: *Laster v. T-Mobile USA, Inc.,* 407 F.Supp.2d 1181, 1191-1192 (S.D. Cal. 2005)  (because contracts at issue were "non-negotiable form contracts, involving an alleged scheme to cheat large numbers of consumers out of small sums of money, the arbitration clauses" prohibiting class actions were substantively unconscionable and noting that there is no indication attorney's fees are an adequate substitute for the class action); *Acorn v. Household Intern, Inc.,* 211

---

F.Supp.2d 1160, 1174 (N.D.Cal. 2002) (arbitration agreement that "contains numerous one-sided provisions including the prohibition on class actions, the availability of judicial remedies with respect to foreclosure," confidentiality provisions, and provision dividing the majority of costs between plaintiff and defendant was substantively unconscionable);*Wisconsin Auto Title Loans, Inc. v. Jones,* 714 N.W.2d 155 (Wis. 2006) (where arbitration provision was silent as to class actions and parties assumed claims must be pursued individually, court found arbitration provision was unconscionable because it limited the relief available to a putative class given that injunctive relief was not available in the arbitral forum but was available through courts, because defendant was not limited to arbitration, and arbitration fee was assessed without regard for plaintiff's indigence.);   *Luna v. Household Finance Corp., III.,* 236 F.Supp.2d 1166, 1178-1183 (W.D. Wash. 2002) (recognizing that class-action prohibition in an arbitration clause "is likely to bar actions involving practices applicable to all potential class members, but for which an individual consumer has so little at stake that she is unlikely to pursue her claim" and finding prohibition on class action was "used as a sword to strike down access to justice instead of a shield against prohibitive costs" weighed heavily in favor of substantive unconscionability and arbitration provision was in fact substantively unconscionable given class-action waiver, confidentiality provision, one-sided access to court for defendant, and prohibitive arbitration costs to plaintiff); *Lozada v. Dale Baker Oldsmobile, Inc.,* 91 F.Supp.2d 1087 (W.D. Mich. 2000) (arbitration provision was substantively unconscionable because it imposed substantial arbitration costs, failed to provide for declaratory and injunctive relief, and class-action prohibition waived state statutory remedy where state consumer protection law expressly permitted class actions); *Muhammad,__* A.2d. __, 2006 WL 2273448 (N.J. 2006) (class-action waiver in payday loan agreement was substantively unconscionable because such waivers "can functionally exculpate wrongful conduct by reducing the possibility of attracting competent counsel to advance the cause of action" and can "prevent an aggregate recovery that can serve as a source of contingency fees for potential attorneys" given that in light of the small dollar amount at issue, "[t]he availability of attorney's fees is illusory..."); *Leonard v. Terminix International Co*., 854 So.2d 529, 539 (Ala. 2002) (finding arbitration agreement substantively "unconscionable because it is a contract of adhesion that restricts the [plaintiffs] to a forum wherein the expense of pursuing their claim far exceeds the amount in controversy...by foreclosing the [plaintiffs] from an attempt to seek practical redress through a class action and restricting them to a disproportionately expensive individual arbitration"); *Whitney v. Alltel Communications, Inc.,* 173 S.W.3d 300 (Mo. App. 2005) (where disputed .88 cent per-month overcharge was applied to all customers' bills, arbitration clause was substantively unconscionable because the class-action prohibition required customers to bear arbitration costs and because clause prohibited award of incidental, consequential, or exemplary damages that would otherwise be available under state law); *Kinkel v. Cingular Wireless, LLC,* 828 N.E.2d 812 (Ill. App.) *review granted,* 839 N.E.2d 1025 (Ill. 2005)  (arbitration agreement was substantially unconscionable where the cost of

Defendant relies on decisions that have enforced class-action prohibitions in the face of challenges based upon various grounds including unconscionability grounds and statutory grounds. These courts have rejected challenges based on unconscionability primarily because they found that "precluding class action relief will not have the practical effect of immunizing" the defendant given that the agreements permit the plaintiff "and other consumers to vindicate all of their substantive rights in arbitration," *Jenkins,* 400 F.3d at

---

filing individual claims would offset a significant portion of any potential recovery which would further be offset by any costs incurred in presenting the claim and any lost wages for taking time from work to do so and, thus, consumers in the plaintiff's position were left without the effective remedy of class arbitration); *Eagle v. Fred Martin Motor Co.,* 809 N.E.2d 1161 (Ohio App. 2004) (finding substantively unconscionable and against public policy an arbitration clause that contained class-action waiver, waiver of right to proceed as a private attorney general, and confidentiality provision); *Dunlap v. Berger,* 567 S.E.2d 265 (W.Va. 2002) (arbitration provision was substantively unconscionable due to prohibition on availability of punitive damages and class action because such prohibitions bar plaintiff from utilizing two remedies that are essential to enforcing and vindicating rights and protections afforded under state consumer protection statute and state common law); *Powertel, Inc., v. Bexley,* 743 So.2d 570, 575-576 (Fla. App. 1999) (finding arbitration clause substantively unconscionable because of defective notice of terms and because customers were required to waive statutory remedies such as injunctive relief which "effectively removes [defendant's] exposure to any remedy that could be pursued on behalf of a class of consumers...[t]he prospect of class litigation ordinarily has some deterrent effect on a...service provider, but that is absent here" in light of class action prohibition).  Omitted from this discussion are Plaintiff's citations to *Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc.,* 776 So.2d 589 (La.App. 2001) which was *abrogated by Aguillard v. Auction Management Corp.,* 908 So.2d 1 (La. 2005) (holding that presumption of arbitrability exists with regard to enforcement of arbitration agreements under a contract of adhesion analysis) and *Mandel v. Household Bank (Nevada), N.A.,* 129 Cal. Rptr.2d 380 (App. 2003) wherein a petition for review was subsequently granted but the case was ultimately dismissed in light of settlement before the California Supreme Court issued its decision. *Mandel v. Household Bank,* 29 Cal.Rptr.3d 1 (2005).  Additionally, *Lozada* cited *supra* may no longer be reliable to the extent that the court relied on a decision that was ultimately reversed by the Third Circuit.  Further, the District Court for the Northern District of West Virginia noted in dicta that *Dunlap,* cited *supra,* is preempted by the FAA.  *Schultz v. AT&T Wireless Servs., Inc.,* 376 F.Supp.2d 685, 692 (N.D.W.Va. 2005).

878[17]; the arbitrator's decision will be final and binding on the defendant, *Hutcherson v. Sears Roebuck & Co.,* 793 N.E.2d 886 (Ill. App. 2003); and the strong policy expressed in both federal and state law favors the enforcement of arbitration provisions. *Walther,* 872 A.2d 735; *Vigil v. Sears National Bank*, 205 F.Supp 2d 566 (E.D. La. 2002).[18]

Courts have also rejected arguments that class-action prohibitions in arbitration agreements are inconsistent with various federal statutes such as the Truth in Lending Act (hereinafter "TILA") and the Age Discrimination in Employment Act (hereinafter "ADEA"). The rationale supporting those decisions focused on the text of the statute at issue to determine whether Congress intended to create a non-waivable right to bring a class action. *See Randolph v. Green Tree Financial Corp.-Alabama,* 244 F.3d 814, 818 (11th Cir. 2001) (even though TILA specifically contemplates class actions, Congress did not intend to preclude parties from entering contracts waiving their ability to seek class-action relief); *Johnson v. West Suburban Bank,* 225 F.3d 366 (3rd Cir. 2000) (same regarding TILA and Electronic Fund Transfer Act): *Livingston v. Associates Finance, Inc.,* 339 F.3d 553 (7th Cir. 2003) (same holding under TILA); *Marsh v. First USA Bank NA.,* 103 F.Supp.2d 909

---

[17]*See also Snowden v. Checkpoint Check Cashing,* 290 F.3d 631 (4th Cir. 2002) (because statute at issue permitted recovery of attorney's fees, the court rejected argument that class-action prohibition in arbitration agreement was unconscionable where the plaintiff argued she would be unable to maintain legal representation given small amount of damages); *Autonation USA Corp. v. Leroy,* 105 S.W.3d 190, 200 (Tex. App. 2003) (rejecting Plaintiff's "generalizations" that "without the class-action device consumers will be disinclined to pursue individual remedies for small damages" given that Plaintiff did not argue that "arbitration will deprive her of any substantive rights or statutory remedies" under state law that she would otherwise have as a member of a class).

[18]Plaintiff attempts to distinguish *Vigil* because the arbitration clause therein did not prohibit class claims. (Plaintiff's Opposition, p. 14) A reading of *Vigil* is to the contrary. The court therein specifically stated that the plaintiff challenged the arbitration provisions waiving the right to a jury trial or a proceeding as a class action. *Vigil,* 205 F.Supp.2d at 570, 573. Although Arizona law was applied in *Vigil,* that court looked to other jurisdictions given that Arizona had not yet addressed the issue whether such class-action waivers are unconscionable.

(N.D.Tex. 2000) (same under TILA).[19] The United States Supreme Court, in a decision holding that mandatory arbitration was not inconsistent with the ADEA noted that the applicable arbitration rules provide for class proceedings. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33 (1991).

The courts in this line of cases also noted that the state's public policy goals could be vindicated through arbitration and that the federal statutes at issue also provided for enforcement by administrative agencies. *See e.g., Gilmer,* 500 U.S. at 32-33*; Randolph,* 244 F.2d at 818; *Johnson,* 225 F.3d at 373-374.   Plaintiff persuasively points out that these cases did not address whether the class-action prohibition was unconscionable.   (Plaintiff's Opposition, p.14)  However, several courts have overlooked this distinction and have cited many of these cases as authority to reject challenges based on state-law  unconscionability grounds  to class-action prohibitions.  *See Jenkins,* 400 F.3d 868; *Vigil,* 205 F.Supp.2d 566; *Lomax v. Woodmen of the World Life Insur. Soc'y.,* 228 F.Supp.2d 1360 (N.D. Ga. 2002); *Hutcherson,* 793 N.E.2d 886. Decisions determining whether a *federal statute* impliedly limits arbitration, while instructive, are not binding on the issue of "whether class arbitration waivers are unconscionable under *state law* principles."  *Discover Bank,* 113 P.3d at 1114 n.6 (emphasis added). *See also Muhammad,* __ A.2d. __, 2006 WL 2273448 (the reconciling of various remedial federal statutes, such as the TILA and ADEA, with the FAA requires consideration of whether "Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue...[t]hat is a uniquely federal question, distinct from an analysis of *state* contract law...") (emphasis in original); *Kinkel,* 828 N.E. 2d 812, 821[20]

_____

[19]Although *Marsh* found generally that the contract was not unconscionable, the court's specific discussion of the class-action prohibition addressed the argument that such prohibition foreclosed substantive statutory  rights under the TILA.

[20]The Illinois Supreme Court has issued an opinion on review of *Kinkel* which has not been released for publication in the permanent law reports and until it is released the decision is subject to revision or withdrawal. *Kinkel v. Cingular Wireless,* __ A.2d __, 2006 WL 2828664 (Ill. October 5, 2006).  This Report and Recommendation does not rely upon the

("It is one thing to say that a particular arbitration clause or portion thereof is unconscionable; it is another thing to say that arbitration is inconsistent with the purposes of an entire statutory scheme.")

(b) The class-action prohibition herein is substantively

unconscionable

The Ninth Circuit has stated that

> [t]he task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum...In doing so, federal courts are bound by the pronouncements of the state's highest court on applicable state law...Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it...In assessing how a state's highest court would resolve a state law question-absent controlling state authority-federal courts look to existing state law without predicting potential changes in that law.

*Ticknor,* 265 F.3d at 939 (citations and quotation marks omitted).  It is well-established among the Arizona courts  that "if Arizona law has not addressed an issue, we 'look approvingly to the laws of California,' especially when interpreting a similar or identical statute.  The caveat to that principle, however, is that we 'follow the California cases in so far as their reasoning is sound.'" *Moore v. Browning,* 50 P.3d 852, 860 (Ariz. App. 2002) (*quoting State v. Vallejos,* 358 P.2d 178, 182 (1960)) (declining to follow California law in that case because such reasoning was unsound).  Defendant points out that the California courts' reasoning rejecting class-action prohibitions in arbitration agreements, as applied by the Ninth Circuit and adopted by other jurisdictions, has been referred to by some as the "minority" view.  *(See* Defendant's Reply, p.5 (*citing Walther,* 872 A.2d at 750-751)).  However the holding of *Szetela* and its progeny has also been described as "the better reasoned view."  *Walther,* 872 A.2d at 759 n.2 (CJ Bell dissenting).  Under the instant circumstances  the reasoning of the California court is sound and the better reasoned view.

Arizona recognizes that consumer protection statutes are necessary "to counteract the

---

Illinois Supreme Court's opinion.

disproportionate bargaining power which is typically present in consumer transactions." *Dunlap v. Jimmy GMC of Tucson, Inc.,* 666 P.2d 83, 89 (Ariz.App. 1983) (discussing Consumer Fraud Act). Similarly, regulation of the small-loan/deferred presentment industry serves dual purposes: "first–to protect consumers from abuses and predatory practices and second, to allow authorized lenders to lawfully charge higher interest rates on small loans than would be allowed under the general usury statute." *Aros v. Beneficial Arizona, Inc.,* 977 P.2d 784, 788 (Ariz. 1999) (en banc) (discussing Consumer Loan Act). *See also Minutes of Committee on Financial Institutions and Retirement*, 44th Leg., 2d Regular Sess. (Ariz. January 26, 2000) (regarding S.B. 1266 providing for licensure and regulation of deferred presentment companies).

The United States Supreme Court has recognized the importance of class actions generally and specifically in the context of consumer protection as follows:

> The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.

*Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 339 (1980); and

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997) (citation omitted). The Arizona court, likewise, has recognized that when individual recoveries are relatively small, a class action is the only possible device which would afford relief to numerous plaintiffs with such claims. *See Godbey v. Roosevelt School Dist. No. 66 of Maricopa County,* 638 P.2d 235, 240 (Ariz. App. 1981).

Defendant asserts that because "the arbitration provision has the same binding effect on QC Financial and QC Financial bears the financial burden of arbitration," the arbitration

provision "therefore does not 'protect' QC Financial." (Defendant's Reply, p.7 (*citing Hutcherson,* 793 N.E.2d at 895)).[21]  Although the arbitration provision is binding upon Defendant, the provision does not expressly provide that the class-action prohibition applies to Defendant. (*See* Defendant's Memorandum, Ex. B, ¶8; Defendant's Reply, p.7 ("the arbitration provision has the same binding effect on QC Financial...");  TR. pp. 28, 40) Defendant concedes that  it "may not be likely to file a class action against customers." (Defendant's Reply, p.7) Upon the Court's inquiry at oral argument whether there is a circumstance where Defendant would ever file a class action against its customers, Defendant's counsel responded:

> I can't answer that question, Your Honor...I guess, yes...I could see that... I'm personally familiar with situations in which entities...having been involved in a lot of standardized contracts will file a class action seeking to resolve an issue on the class basis so that they have the benefit of collateral estoppel or res judicata on that issue, but it's highly unusual.

(TR. pp. 14-15)  Defendant thus implicitly recognizes the importance of class actions obtaining collateral estoppel effect and avoiding the filing of individual suits against each customer.

That the arbitrator's decision is final and binding on Defendant does not support Defendant's assertion that the class-action waiver herein does not "protect" Defendant. The fact that resolution by arbitration of one consumer's claim against Defendant would be binding overlooks the impact the class-action prohibition has on actual and  potential claims against Defendant. To appreciate the full impact of the class-action waiver, its purpose must

---

[21]In *Hutcherson* the Illinois appellate court stated that, *inter alia,* a class-action prohibition was not unconscionable given that the "arbitrator's decision is final and binding on [the defendant]....Moreover, [the defendant] undertakes the burden of all arbitration fees at the customer's request. [The defendant]...would remain responsible for the fees even if the customer loses but the arbitrator finds the claims were not frivolous." *Hutcherson,* 739 N.E.2d at 895. Although the *Hutcherson* court "applied" Arizona law pursuant to the choice-of-law provision of the contract at issue, the court recognized that the "Arizona courts have not addressed this issue so we look to other jurisdictions for guidance." *Id.* at 894. Defendant agrees that *Hutcherson* is not a statement of Arizona law. (TR. pp.9-10)

be examined. The "birth" of the class-action waiver has been described by one commentator as follows:

> In the late 1990s, trade-journal articles first appeared encouraging corporate counsel to consider redrafting contracts to include provisions requiring consumers and others to waive the right to participate in class actions or even group arbitrations. A 1997 "Practice Tips" column in the Franchise Law Journal suggested that, in the wake of a nine-figure class action jury verdict in favor of Meineke Discount Muffler franchisees against the home office, franchisors should seriously consider requiring:
>> each franchisee in the potential class to pursue individual claims in a separate arbitration. Since many (and perhaps most) of the putative class members may never do that, and because arbitrators do not issue runaway awards, strict enforcement of an arbitration clause should enable the franchisor to dramatically reduce its aggregate exposure.
>
> Another corporate attorney writing in a business journal recommended that commercial clients take full advantage of the favorable Supreme Court arbitration jurisprudence by incorporating class action waivers into arbitration clauses whenever practical.

Myriam Gilles, *Opting Out of Liability: The Forthcoming, Near-Total Demise of the Modern Class Action,* 104 Mich. L. Rev. 373, 396-397 (2005) (*citing Broussard v. Meineke Disc. Muffler Shops,*, 958 F.Supp. 1087 (W.D.N.C. 1997) *rev'd on other grounds,* 155 F.3d 331 (4th Cir. 1998); Edward Wood Dunham, *The Arbitration Clause as Class Action Shield,* 16 Franchise L.J. 141 (1997); Kay O. Wilburn, *A Clause You Don't Want to Overlook,* Bus. L. Today, Nov./Dec. 1996 at 55, 57-58)).  One of the proponents of class-action waivers, cited by Gilles, also "warned that '[i]n this day and age ... most class action suits against established franchisors will involve impressively large aggregate damage claims.... [And while] [a]n arbitration clause may not be an invincible shield against class action litigation, it is surely one of the strongest pieces of armor available to the franchisor.'" *Id.* n.121 (*quoting* Dunham, 16 Franchise L.J. at 141).  Thus it is well-known that such clauses are inserted into arbitration agreements to protect the drafter of the agreement, such as Defendant, from large aggregate damage awards.  *Id.*

That the arbitration result is binding on Defendant means "that any remedies obtained will only pertain to that single customer without collateral estoppel effect."  *Szetela,* 118 Cal.Rptr. 2d at 868.  "[B]ecause...damages in consumer cases are often small and because

'[a] company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit...the class action is often the only effective way to halt and redress such exploitation.'" *Discover Bank,* 113 P.3d at 1108-1109 (*quoting Linder v. Thrifty Oil Co.,* 2 P.3d 27, 39 (Cal. 2000)).   By denying class arbitration, Defendant "has precluded the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone...this is an advantage that inures only to" Defendant.    *Powertel,* 743 So.2d at 576. Hence, the class-action waiver   is not inconsequential as Defendant contends. That provision insulates Defendant from the spectre of a ruling which would have  precedential effect and value, such as application of collateral estoppel, on Defendant's business practice as a whole.

Although the parties may elect to bring a claim in small claims court, any appeal therefrom must be to an arbitrator, not the Arizona courts.  Such a provision works together with the class-action prohibition to insulate Defendant from aggregate awards that otherwise could be imposed and from collateral estoppel effect.  Individualizing each claim absolutely and completely insulates and immunizes Defendant from scrutiny and accountability for its business practices and "'also serves as a disincentive for [Defendant]...to avoid the type of conduct that might lead to class action litigation in the first place.'" *Discover Bank,* 113 P.3d at 1108 (*quoting Szetela,* 118 Cal.Rptr 2d at 868). Thus, any deterrent effect Plaintiff's action would have upon Defendant's business practices, in light of Arizona's public policy evinced in its consumer protection laws, small-loan/deferred presentment industry regulation, and recognition of the importance of class actions, is absent.[22]  *See Powertel,* 743 So. 2d at 576

---

[22]Otherwise, Defendant's source of disincentive is internal business altruism, speculatively regardful governmental action, or some ephemeral external influence of the marketplace. (*See* TR. p. 16 ("As a practical matter, if an arbitrator finds that...the company is engaged in a...criticizable practice, as a practical matter, my [defense counsel's] experience has been that the company has changed that practice because they don't want to go through it again."); TR. p. 21 ("if a company hypothetically were systematically engaged in unfair business practices, two things will happen.  One, the authorities, the attorney general, the county attorney will...do something about it.  And two, the marketplace is going to shun

("The prospect of class litigation ordinarily has some deterrent effect on a manufacturer or service provider, but that is absent here" due to class-action waiver in arbitration clause) Courts that have disagreed with this reasoning failed to acknowledge the complete impact of such a waiver and/or relied on cases that did not consider an unconscionability argument.

The Arizona Attorney General may have the ability to bring an enforcement action against Defendant but that does not, in and of itself, support a finding that the class-action waiver herein is enforceable.  Class actions are "an evolutionary response to the existence of injuries unremedied by the regulatory action of government." *Deposit Guaranty National Bank,* 445 U.S. at 339.  Defendant acknowledges that Plaintiff would not directly "benefit from" a state governmental enforcement action because any award would not compensate Plaintiff but would go to the state.  (TR. pp. 18-19)  The mere possibility that a state agency may at some time file an enforcement action should not preclude Plaintiff and other similarly situated consumers from seeking a legal remedy, including money damages, for Defendant's alleged widespread conduct.  *See Discover Bank,* 113 P.3d at 1110 ("small claims litigation, government prosecutions, or informal resolution" are not adequate substitutes for class actions).

Plaintiff's concedes that if she proves to an arbitrator that she was overcharged, "then she can an obtain an arbitration award and" attorney's fees.  (TR. p.42)  However, Plaintiff also points out: "[i]f it weren't for the mechanism of a class action claim," she "probably" would not have been able to file and prove her claim "from the start..."because Ms. Cooper probably wouldn't have been able to hire a lawyer...she's not going to find a lawyer who's going to represent her for a $100 claim...it's just not cost effective do that."  (TR. pp. 42-43; *see also* TR. pp. 44-45)[23]  Plaintiff's point is well-taken in light of the fact that "[t]he

them."))

---

[23]Plaintiff "has a lawyer because she's" the roommate of the daughter of Plaintiff's counsel's legal assistant.  (TR. p. 45)

availability of attorney's fees is illusory if it is unlikely that counsel would be willing to undertake the representation." *Muhammad,* __ A.2d __, 2006 WL 2273448 (N.J. 2006). There is no indication that "attorney fees are an adequate substitute for the class action" mechanism or that they ameliorate the problems posed by such class-action waivers. *Discover Bank,* 113 P.3d at 1110. See also *Laster,* 407 F.Supp.2d at 1191 (same).

Arizona has acknowledged "a strong public policy, both federal and state, favoring arbitration." *Harrington,* 119 P.3d at 1051 (citations omitted). *See also City of Cottonwood,* 877 P.2d at 288 (Because Arizona public policy favors "arbitration, arbitration clauses are construed liberally and any doubts about whether a matter is subject to arbitration are resolved in favor of arbitration.") Yet, the Arizona court has not hesitated to set aside arbitration provisions that were oppressive, "grossly inequitable," or beyond the reasonable expectation of the parties. *Harrington,* 119 P.3d at 1051 (*citing Stevens/Leinweber/Sullens, Inc. v. Holm Dev. and Mgmt., Inc.,* 795 P.2d 1308, 1313 (App. 1990)); *see also Broemmer,* 840 P.2d 1013. Where, as here, the class-action prohibition "is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money," *Discover Bank,* 113 P.3d at 1110 , "[t]his court cannot close its eyes to the reality" of the impact of the class-action waiver. *Stevens/Leinweber/Sullens, Inc.* 795 P.2d at 1313 (invalidating one-sided arbitration agreement).   For the foregoing reasons, the class-action waiver herein, is substantively unconscionable and  against public policy.

Such conclusion does not:

indicate[] any hostility...directed at arbitration, but at the manner in which it was forced upon the consumers,...The decision is hostile to the adhesive and oppressive nature of the [agreement], not to the particular forum... More importantly, the Supreme Court's generalized statements on arbitration do not override the FAA's particular rule, which obtains here and which is well-settled:  '[G]enerally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without

contravening section 2.' *See Doctor's Assocs.,* 571 U.S. at 687.

*Ting*, 319 F.3d. at 1152.  *See also Buckeye Check Cashing, Inc.,* __ U.S. __, 126 S.Ct. 1204 (recognizing that the FAA permits "[c]hallenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract...'") (*quoting* 9 U.S.C. § 2).  Neither this opinion nor Arizona contract law on unconscionability singles out arbitration provisions.  The unconscionability of class-action waivers in arbitration provisions must be determined on a case-by-case basis as was done in the instant case.

(3)  Remedy

Under the circumstances of this case, the arbitration provision is unconscionable and against public policy because of the prohibition on class-actions.  The next question is whether the *entire* arbitration provision should be set aside as unenforceable.  Courts have set aside entire arbitration agreements upon a finding that  the class-action prohibition together with other additional unconscionable terms permeated the arbitration provision in such a way as to invalidate the entire arbitration agreement.  *See e.g. Ingle,* 328 F.3d at 1180 ("because an 'insidious pattern' exists in [defendant's] arbitration agreement...we conclude the agreement is wholly unenforceable") (footnotes omitted); *Luna,* 236 F.Supp.2d at 1183 (severing entire arbitration provision because "the unconscionable provisions are interrelated and each serves to magnify the one-sidedness of the others.  As such the Arbitration Rider is tainted with illegality."); *Eagle,* 809 N.E.2d at 1185 ("in light of the various deficiencies found within the clause, this court finds that this arbitration clause is substantively and procedurally unconscionable, and therefore unenforceable in its entirety.")

In contrast, where only the class-action waiver is the unconscionable aspect of the arbitration provision, the court has severed that specific waiver and directed that the action proceed to class arbitration.  *See e.g. Szetela,* 118 Cal.Rptr.2d  862 (court severed the class-waiver provision from the arbitration clause and left the plaintiffs to pursue classwide arbitration); Gilles, 104 Mich. L. Rev. at 409 & n.185 ("Other courts faced with arbitration agreements that were silent as to classwide arbitration have similarly ordered class claims to

proceed in the arbitral forum.") However, a plurality of the United States Supreme Court has since held that federal and state courts may not order that the matter proceed as a class arbitration, but the court may order that the arbitrator determine whether class arbitration is appropriate.  Gilles, 104 Mich. L. Rev. at 409 (*citing Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444 (2003)).  *See also Kinkel,* 828 N.E.2d at 823 (severed only the unconscionable class-action waiver and determined the "claim can still be arbitrated if the arbitrator is free to determine that class arbitration is appropriate.")   The American Arbitration Association and J.A.M.S./Endispute, both of which Plaintiff herein may select to administer the arbitration, have promulgated procedures  to govern cases where, *inter alia,* "a court has ordered that an arbitrator determine whether a class arbitration may be maintained." *Supplementary Rules for Class Arbitrations, American Arbitration Association website,* www.adr.org..  *See also* www.Jamsadr.com.

Generally, the Arizona "courts do not rewrite contracts for parties...If it is clear from its terms that a contract was intended to be severable, the court can enforce the lawful part and ignore the unlawful part...Where the severability of the agreement is not evident from the contract itself, the court cannot create a new agreement for the parties to uphold the contract." *Olliver/Pilcher Insur. Inc. v. Daniels,* 715 P.2d 1218, 1221 (Ariz. 1986) (citations omitted).  *See also Himes v. Safeway Insur. Co.,* 66 P.3d 74, 87 (Ariz. App. 2003) (recognizing that "[a] lawful promise made for a lawful consideration is not invalid merely because an unlawful promise was made at the same time for the same consideration.") (citation omitted).  The Arizona Supreme Court has recognized that in the context of contracts containing restrictive covenants but not containing a severability clause, Arizona courts will eliminate "grammatically severable, unreasonable provisions."  *Fearnow v. Ridenour Swenson, Cleere & Evans, P.C.,* 138 P.3d 723, 731 (Ariz. 2006).

The arbitration provision in the Application herein, is superseded by the arbitration provision in the Agreement. (Defendant's Memorandum, p.2 (The Agreement "super[c]eded the Customer Application..."); Defendant's Memorandum, Ex. A ("All customer agreements

contain another arbitration provision that supercedes this arbitration provision and governs the resolution of disputes.")) Paragraph 1 of the Agreement requires Plaintiff to agree to arbitrate, *inter alia,* all claims asserted by her as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against Defendant or related third parties–however, paragraphs 2(c) and 3 of that same Agreement prohibit such class actions. (Defendant's Memorandum, Ex. B) Paragraphs 2(c) and 3 are grammatically severable from the Agreement. Once these unconscionable paragraphs are severed, the case can proceed to arbitration and this Court can direct the arbitrator to determine whether Plaintiff satisfies the requisite criteria for this matter to proceed as a class arbitration.[24] Preserving the arbitration provision sans unconscionable paragraphs 2(c) and 3 is also consistent with the Federal Arbitration Act and Arizona public policy favoring both arbitration and class actions.

<u>(d) Dismissal</u>

Defendant has moved for dismissal, or in the alternative, for an order compelling arbitration and staying proceedings. At oral argument, Defendant indicated that "[i]t really doesn't matter" whether the action is stayed or dismissed. (TR. p. 30) Although Plaintiff agrees that there is not "any real difference between" a stay or dismissal, Plaintiff requests dismissal if the Court is inclined to order arbitration so that the order will be immediately appealable. (TR. 53)

Section 3 of the FAA specifically provides for a stay:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of

---

[24]The issue for the arbitrator does not concern whether the class-action prohibition is unconscionable. Pursuant to section 2 of the FAA, this Court has made the determination that the prohibition is unconscionable. Rather, the issue for the arbitrator is whether the matter is suitable for class arbitration under the applicable criteria.

the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. §3. The Ninth Circuit has held that section 3 of the FAA does "not limit the court's authority to grant a dismissal" where the arbitration clause in that case required the plaintiff to submit all claims to arbitration. *Sparling v. Hoffman Constr. Co., Inc.,* 864 F.2d 635, 638 (9th Cir. 1988). *See also Simula Inc.,* 175 F.3d 716 (Ninth Circuit affirming district court's order granting motion to compel arbitration and motion to dismiss); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (emphasis in original).

Once the class-action prohibition herein is severed, the unconscionable provision is thus removed and all of Plaintiff's claims must be submitted to arbitration. Consequently, Plaintiff cannot state a claim for relief in this forum. Dismissal is appropriate. See *Sparling,* 864 F.2d 635; *Simula Inc.,* 175 F.3d 716.

## III.  RECOMMENDATION

For the foregoing reasons, Plaintiff is correct that the class-action prohibition herein is procedurally and substantively unconscionable and against public policy. Therefore, the Magistrate Judge recommends that the District Court: (1) sever the class-action prohibition; (2) grant Defendant's Motion to Compel Arbitration; (3) direct the parties to submit to the arbitrator the question whether Plaintiff satisfies the requisite criteria necessary for class arbitration; (4) grant Defendant's Motion to Dismiss (Doc. No. 10); and (5) deny as moot Defendant's alternative request for a stay.

Pursuant to 28 U.S.C. §636(B), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within ten days after being served with a copy thereof. Fed.R.Civ.P. 72(b). If objections are filed, the parties should use the following case number: **CV 06-10-TUC-FRZ.**

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived.  *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

The Clerk of Court is directed to send a copy of this Report and Recommendation to the parties and/or their counsel.

DATED this 22nd day of November, 2006.

_____

Héctor C. Estrada
United States Magistrate Judge

- 36 -